STATE OF NEBRASKA, EX REL. J. Y. NILES, RELATOR, V. CHARLES WESTON, AUDITOR, RESPONDENT.

FILED JANUARY 21, 1903.   No. 13,042.

1. **Writ of Mandamus Against State Auditor.** A petition for a peremptory writ of mandamus directed to the state auditor, requiring him to register refunding bonds issued by a county, and certify thereon that such bonds have been regularly and legally issued and registered in accordance with law, will be held defective in substance, on a ruling on a demurrer thereto, where it is not made to appear from **the allegations therein**

Syllabus by court; catch-words by editor.

contained that there has been filed in the office of the auditor the necessary information and data relative to the issuance of such bonds, from which it may be inferred that they were issued by authority and in pursuance of a valid statute, and that the statutory requirements to entitle them to registration have been complied with.

2. **Mandamus:** RIGHT OF RELATOR: INTENDMENT. Before the court is warranted in granting a peremptory writ of mandamus, it must be made to appear that the relator has a clear legal right to the performance by the respondent of the duty which it is sought to enforce. Nothing essential to that right will be taken by intendment.

ORIGINAL application for a writ of mandamus directed to the auditor of the state commanding him, on a day named in said writ, to register in his office, a certain refunding bond of $1,000 issued by Douglas county, and also commanding him, under his seal of office to certify on such bond the fact that it had been registered in his office and was legally issued. *Writ denied.*

*Alfred Hazlett* and *Fulton Jack,* for relator.

*Frank N. Prout, Attorney General,* and *Norris Brown, contra.*

HOLCOMB, J.

The relator in his petition prays that a peremptory writ of mandamus be issued directed to the respondent, as auditor of the state, requiring him to register a certain bond alleged to be held and owned by him, which was issued by Douglas county as one of a series of refunding bonds, to take up other bonds of the county then outstanding. A demurrer is interposed by the attorney general on the ground that the petition does not state facts sufficient to warrant the granting of the relief prayed for, and also because it is shown on the face of the petition that the bond which it is sought to require the auditor to register was issued under an act of the legislature which is void, as declared by the previous decisions of this court.

The question, therefore, we are called upon to determine, is whether upon the face of the petition, the allegations of which are admitted to be true, the relator is entitled to the writ prayed for. The material averments of the petition, so far as are necessary to a proper consideration of the demurrer, are in substance as follows: That Douglas county, prior to the first of July, 1887, had outstanding a bonded indebtedness of $268,000, bearing interest at 8 per cent. per annum, which was incurred to aid in the construction of certain lines of railroad by certain railroad companies (naming them), due and payable July 2, 1897; that on July 2, 1887, the said indebtedness was compromised and refunded at an interest rate of 5 per cent. per annum, said refunding bonds being issued to take up, be substituted and exchanged for the bonds and annexed coupons, theretofore issued and outstanding, and which indebtedness had been compromised as aforesaid; that said refunding bonds were issued by authority and in pursuance of an act of the legislature of the state of Nebraska approved March 5, 1885, being of the denomination of $1,000 each, with coupons for interest from the first day of July, 1887, at the rate of 5 per cent. per annum; that the bonds so issued did not at the time exceed the actual amount of outstanding indebtedness of said county, inclusive of the attached coupons so refunded by said new bonds; that the said refunding bonds are legally and regularly issued in conformity with the act of the legislature of the state of Nebraska approved March 5, 1885. It is then alleged "that the proper officers of Douglas county, at the time of issuing said refunding bonds, made out and transmitted to the respondent, as auditor of the state of Nebraska, a certified statement of all proceedings had by the county and board of county commissioners of the county, as shown of record, and stating that said bonds had been issued for value in all respects in conformity with said act of the legislature of the state of Nebraska, approved March 5, 1885, as required by the proper officers of the county, which said statement was attested by the county

18

clerk under his official seal." It is further alleged that the relator, before these proceedings were begun, became the owner and holder of bond No. 10, for $1,000, being one of the bonds aforesaid issued by the said county on the first day of July, 1887.

From what is hereinafter said, we must not be understood as in any way intimating that the bond which it is sought to have the state auditor register or any of the series of the issue of which it is one, are invalid or were issued without authority of law. The case is discussed solely in its aspect in relation to the legal duty or the lack thereof, of the state auditor to register the bond in his office and certify thereon that it had been issued in compliance with, and in conformity to law. By section 12 of chapter 9, Compiled Statutes, 1901,* it is provided that whenever the holder of county bonds shall present the same to the auditor of the state for registration, the auditor, upon being satisfied that such bonds have been issued according to law, shall register the same in his office and certify upon such bonds the fact that they have been regularly and legally issued and have been registered in his office in accordance with the provisions of the act; the data filed in his office being the basis of such certificate. While the bond in question purports to have been issued under the authority given by the act of 1885, approved March 5 (Session Laws 1885, chapter 59, page 270), it is conceded that this act, which was amendatory legislation, attempted to amend certain sections of the act of 1877, which latter act had been repealed by implication by the act of 1883 (Session Laws 1883, chapter 29), and that because said original act of 1877 had been thus repealed the amendatory legislation of 1885 sought to amend a void act, and therefore neither the original act nor the amendatory legislation ever had any legal existence subsequent to the time of the passage and taking effect of the act of 1883. The act of 1885, under the authority of which the bond held by relator purports to have been issued, has

*Cobbey's Annotated Statutes, sec. 10757.

been by this court heretofore declared void and of no effect, in the case of *State v. Benton*, 33 Nebr., 823, and in *State v. Benton*, 33 Nebr., 834. These decisions are regarded as final on the question of the invalidity of the act approved March 5, 1885, above mentioned, and we are not asked to re-examine the question.

It is contended, however, by counsel for relator, and we are disposed to agree therewith, that the act of 1883, heretofore referred to, which related to the authority of counties to refund outstanding bonds at a low rate of interest, was sufficient authority for the action taken by the officers of Douglas county in refunding the bonds described in the petition, and that even though the county commissioners ostensibly acted in pursuance of the authority attempted to be given by the act of 1885, yet such action was valid, if in fact there existed at the time a law authorizing that which was actually done. Without, however, determining that question, which is not properly before us, we undertake only a consideration of the duty of the auditor under the facts alleged in the petition, and for that purpose assume that the general legislation on the subject of refunding bonds contained in the act of 1883 authorized the refunding of the outstanding bonded indebtedness mentioned. It should here be said that it is evidently the intention of section 12, chapter 9, *supra,* that the auditor shall be furnished with data sufficient to advise him that county bonds have been issued or refunded in accordance with the provisions of law before he can rightfully be asked to certify, as therein contemplated, to the legality of the issue. This information is usually contained in a document properly certified by the county authorities which is frequently called a history of the bonds issued, containing all the necessary information showing compliance with and conformity to the essential requirements of the statute in relation to the issuance of such bond or bonds. Without such information has been produced and filed with the auditor, he can not, in justice, be asked to register bonds issued by a county, and certify thereon the regularity and legality

of their issue in the manner contemplated by section 12 aforesaid. In this connection we should perhaps say that in our opinion, the mere fact that the county authorities recite in the bond, or the history thereof, that action was taken in pursuance of and under a void statute, when in fact there was legal authority at the time existing for the action taken, would not be a sufficient excuse to justify the auditor in declining to register a bond or series of bonds otherwise entitled to registration. If the bond in question, although ostensibly issued under the authority of the void act of March 5, 1885, was in fact authorized by the act of 1883, or any other valid law then existing, it would, we think, be the duty of the auditor to register and certify as contemplated by statute when he was furnished, as required by law, the necessary information and data from which the validity of the issue and the regularity of the proceedings could be inferred. The law is intended, we apprehend, to safeguard the issuance and floating of municipal securities and to prevent spurious and irregularly issued bonds from being imposed on the investing public, and thus better maintain the credit of the state and its various political subdivisions. The registry and certification by the state auditor of municipal bonds gives to them credentials of authenticity, regularity and legality of issue, which they would not otherwise possess, and is calculated to inspire greater confidence in prospective investors as to their validity. All that is alleged in the petition as to the information furnished to the auditor relative to the history of the transaction from which he is to determine his duty regarding the registration of the bond and making the proper certification thereon, is that a statement of all proceedings had by the county and board of county commissioners, as shown of record, had been transmitted to the respondent, properly certified, in which it was said that the bonds had been issued for value and in conformity with the act approved March 5, 1885. The certified statement alluded to obviously refers to the proceedings had of record in connection with the issuance of the refunding bonds.

Admitting this statement to be true, which the demurrer does, and accepting as true the other allegations as to the issuance of a series of refunding bonds, does the legal inference necessarily arise that it is the duty of the auditor to register and make certification on the bond presented by the relator as prayed for in the petition? We think not. The fair test as to the proper answer to the question is whether we can say from what is alleged in the petition that it is the duty of the state auditor upon information and data certified and furnished him as alleged, to register and certify to the bond in controversy, because it is made to appear from the information and data thus furnished him that the bond was regularly and legally issued in accordance with law. The auditor presumably did his duty and refused to register the bond presented for reasons that are sufficient in law. The validity of the refunding bonds in the first instance depends for support upon the regularity and legality of the issue of the bonds for which they were substituted as refunding bonds. There must exist a basis for the issuance of the refunding bonds, or in other words, there must be valid bonds to refund before the county board is authorized to proceed to refund the indebtedness under the law providing therefor. It is necessary, then, that the auditor be advised of the history of the original transaction, and have information as to the proceedings in respect of the bonds originally issued, as well as of the bonds issued to refund them. By the act of 1883, it was provided that in the issuance of refunding bonds as therein authorized, the county clerk of the county issuing such bonds should certify to the auditor the number, amount and description of each bond canceled or to be canceled and refunded and the amount due thereon for principal and unpaid interest, and thereupon the auditor is authorized to register a similar amount of refunding bonds, but in no case shall the auditor register any refunding bonds in excess of the amount so certified to him by the county clerk, and that the bonds shall be entitled to registration in the order presented to the auditor. Nothing is stated in the

petition from which it appears that this information has
been furnished the auditor, and the provisions of the sec-
tion complied with, which is a condition precedent to his
registration and certification of the refunding bonds. From
all that appears in the petition, registration may have been
made of all bonds he was entitled to register under the
provisions of the act of 1883. But if it be contended that
the bond should be registered under the law as at present
existing, then, by reference to section 40, chapter 9, Com-
piled Statutes, 1901,* it will be seen that refunding bonds
are to be registered as provided by law for the registration
of municipal bonds generally. By section 10 of said chap-
ter it is made the duty of proper county officers, when
bonds are issued, to make registration in a book kept for
that purpose of all of the several transactions connected
with the issuance of such bonds as therein enumerated, and
transmit to the auditor of state a certified statement of
such registry for his information; and by section 11 further
duties devolve upon the county clerk with respect to the
bonded indebtedness of such county, and giving the infor-
mation thereof to the auditor for his information and
guidance in the registration of bonds in his office and the
certification thereof, as provided by law. From the peti-
tion, we can not say that the auditor has been furnished
with and put in the possession of the necessary information
which he is lawfully entitled to before he can be compelled
to register the bond in question, and for that reason the
writ ought not to issue. Before the relator may demand this
writ to issue, it must not only be made to appear that the
bond in question has been legally and regularly issued in
accordance with law, but also that the necessary informa-
tion and data have been filed in the office of the auditor of
state, from which it may be determined by him that the law
in respect thereof has been complied with. This, we are of
the opinion, the relator does not show in his petition for the
writ, and it ought not, therefore, to issue. The rule is that
before the court is warranted in granting a mandamus it

*Cobbey's Annotated Statutes, sec. 10782.

must be made to appear that the relator has a clear legal right to the performance by the respondent of the duty which it is sought to enforce, and that nothing essential to that right will be taken by intendment. *State v. Bowman*, 45 Nebr., 752; *State v. Nelson*, 21 Nebr., 572; *State v. City of Omaha*, 14 Nebr., 265; *State v. Whipple*, 60 Nebr., 650; *State v. Bartley*, 50 Nebr., 874.

The demurrer is sustained.

JUDGMENT ACCORDINGLY.