JOHN H. UERLING V. STATE OF NEBRASKA.

FILED OCTOBER 6, 1933.   No. 28680.

*J. E. Willits* and *James D. Conway,* for plaintiff in error.

*Paul F. Good, Attorney General,* and *William H. Wright, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY and PAINE, JJ., and CHASE and TEWELL, District Judges.

TEWELL, District Judge.

The plaintiff in error, John H. Uerling, hereinafter called the defendant, was convicted in the district court for Adams county for the crime of forgery, and has brought the record of his trial here for review.

The evidence discloses that one Jule Bassett, about the year 1918, sold his farm and turned the proceeds, several thousand dollars, over to the firm of Hoeppner & Uerling of Hastings, Nebraska, a copartnership, engaged in the business of selling real estate, making investments and loans and writing insurance for others. The firm consisted at all times of Ernest Hoeppner and defendant until the death of Hoeppner, after the act charged is alleged to have been committed. The defendant is the surviving partner of the firm. Other than to collect interest, Bassett paid little attention to any investments made for him between the date of turning the money over to Hoeppner & Uerling and March 3 or 4, 1932, at which time he went to the place of business of the firm and, in the absence of the defendant, obtained three boxes that he thought contained all notes and mortgages owned by him. In one of these boxes a coupon bond bearing the date of August 24, 1930, for the principal sum of $1,000 and a mortgage to secure the same were found, each purporting to have been executed by W. W. Keith and Ethel Keith, husband and wife. The property described in the mortgage was the home of Dr. W. W. Keith in Hastings, Nebraska. Jule Bassett was named payee in the bond and mortgagee in the mortgage. The mortgage purports to have been dated, acknowledged and recorded August 24, 1930. A certificate on the back of the mortgage, certifying to the book and page where recorded, and the time when recorded, purports to have been signed by L. N. Button, the then register of deeds. The defendant's name appears as a witness on the mortgage and the mortgage purports to have been acknowl-

edged before him as notary public. At no time while the partnership took care of investments for Bassett did Bassett have the custody of any notes, bonds, mortgages or other instruments evidencing any investments. These were all left in the custody of the partnership.

Dr. W. W. Keith and his wife are shown to have actually executed a mortgage upon their home on August 24, 1922, in which the defendant was named as mortgagee, such mortgage being executed to secure the payment of three notes, one for $200, one for $400, and one for $600. The note for $200 was paid August 20, 1923. The two remaining notes and all accrued interest were paid August 20, 1925. The defendant is shown to have taken Bassett to look at the residence of Dr. Keith and to have told him that he had a loan on it for $1,000. Upon looking at the property, Bassett said he would take the loan. The record is not clear as to when the inspection of the property occurred. The defendant, at a time not clearly disclosed by the record, gave Bassett a memorandum referring to a loan from Wellington W. Keith and wife, Ethel, for $1,000, divided into one note for $400 and one note for $600, each dated August 24, 1922, and due August 24, 1925. This memorandum shows the due dates of interest and principal and amounts thereof on the two last mentioned notes only. The amount paid by Keith to pay off the mortgage on his home seems never to have been paid to Bassett, and Bassett apparently had no knowledge of the principal having been paid. The record shows clearly that the names of W. W. Keith and Ethel Keith were signed to the coupon bond for $1,000 and the mortgage to secure the same, each dated August 24, 1930, by the defendant without the knowledge or consent of the purported makers. It also clearly shows that the mortgage dated August 24, 1930, was never recorded, and that the defendant made the certificate on the back of the mortgage to show the time and place recorded and attached thereto the name "L. N. Button," the then register of deeds, without the knowledge or consent of

such officer. The defendant, in his testimony, denies having had any intent to defraud any one. He says that he made the note and mortgage for a notation to remind him when "we checked up Mr. Bassett's papers that there was a loan that ought to be looked after and checked up to find out whether he did or didn't own it." The certificate on the back of the mortgage, he says, was made and signed by him to prevent any one from recording the mortgage. The name W. W. Keith is written on the note and mortgage by the use of large letters, heavily shaded, while the name of Ethel Keith is written by the use of much smaller letters and made to simulate the handwriting of a woman.

Sometime in 1932 a receiver was appointed to take charge of the affairs of the partnership.

The information contained two counts, the first charging forgery of the coupon bond, and the second forgery of the mortgage. The issues submitted to the jury referred only to the elements of forgery as applied to the coupon bond and the conviction was of forgery thereof. A motion to quash the information and a demurrer to the information, each made jointly to both counts, were filed and overruled prior to a plea of not guilty being entered.

Each of one group of assignments of error relates either to the sufficiency of the information or to the sufficiency of the evidence.

It is claimed by the defendant that the information fails to charge a crime and that the evidence fails to prove the commission of a crime for the reason that the information charges that the names of W. W. Keith and Ethel Keith were affixed to the coupon bond on August 24, 1930, and the evidence shows such date to have been on a Sunday, and does not show that the act charged was committed on some other day of the week. It is the theory of the defendant that a promissory note executed on Sunday is void, and that therefore it was necessary for the information to charge facts extraneous to the face

of the instrument showing its execution to have been on some day of the week other than Sunday, in order to charge the false making of an instrument having sufficient legal efficacy to be the subject of forgery. The cases cited to support this theory are from states other than Nebraska, and are largely civil cases. This court has held that a contract made on Sunday is not void for that reason. *Horacek v. Keebler,* 5 Neb. 355. It has been held also that a bill of sale made on Sunday was not for that reason invalid. *Fitzgerald v. Andrews,* 15 Neb. 52. We are cited to no statute making promissory notes void because executed on Sunday. Furthermore, apparent legal efficacy is all that is required, and we hold that a written instrument, made the subject of forgery by statute, is as much the subject of forgery on Sunday as upon any other day of the week, regardless of whether or not it is void because executed on Sunday. 26 C. J. 906.

The defendant also claims the information and evidence are each insufficient for the reason that the instrument that is set forth in full in the first count of the information, and therein called a "promissory note," and alleged to have been forged, is designated upon its face as a "Coupon Bond." In this contention it is urged that the statute defining forgery does not make a coupon bond the subject of forgery and that no act is a crime that is not made penal by the plain import of a statute. The instrument is shown on its face to have all of the qualities of a negotiable promissory note. The statute mentioned makes both a bond and a promissory note, as well as a contract or writing obligatory, the subject of forgery, and plainly includes the instrument copied in the first count, although such instrument bears the name "Coupon Bond." In a prosecution for forgery, it makes no difference what the pleader names the instrument alleged to have been forged, if such instrument is set forth in full in the information and if, as set forth, it is plainly embraced within the instruments made the subject of forgery by the statute. 26 C. J. 941.

It is urged that the evidence is insufficient to prove an intent to defraud. In a prosecution for forgery it is not necessary to allege or prove an intent to defraud any particular person. *Morearty v. State,* 46 Neb. 652; 26 C. J. 904.

One logical construction of the evidence in this case is that the instrument was made with an intent to cause Bassett to believe that his money was invested and safely secured by the mortgage when it was not, while the defendant used the money and paid Bassett interest thereon. Bassett, in such case, would be defrauded of security acceptable to him. The evidence has been examined and is held sufficient to establish the intent to defraud.

A motion requesting disqualification of Judge Blackledge, the judge who presided at the trial, was overruled and this action is assigned as error. To support this motion it was shown that Judge Blackledge, during a few years next preceding the trial, purchased some bonds, secured by mortgage, from the firm of Hoeppner & Uerling, and had lent upon real estate money once or twice through that firm. Some of these notes are still unpaid and a loss may occur on some of them. These bonds and notes were not the obligation of Hoeppner & Uerling, at least other than as indorser or guarantor. No ill feeling for any cause is alleged or claimed. Interest of the trial judge in the outcome of an action to disqualify must be of a pecuniary nature. Comp. St. 1929, sec. 27-315; *Chicago, B. & Q. R. Co. v. Kellogg,* 54 Neb. 138; *State v. Smith,* 77 Neb. 824. It is not shown that the trial judge could benefit in a pecuniary way, either directly or indirectly, by the outcome of this action, and no ground of disqualification other than interest being claimed, no error was committed in denying the disqualification.

One assignment of error relates to the refusal of the trial court to hear what the defendant designates a plea in abatement. The defendant was arraigned and entered a plea of not guilty May 23, 1932. September 26, 1932,

the defendant and his counsel being present in court, this cause was set for trial during the September term, and an order then made to the effect that all preliminary motions or matters to be brought to the attention of the court before the actual trial should be filed and presented on or before October 10, 1932. The motion to disqualify the trial judge was overruled on October 10, 1932, and on that date this case was assigned for trial on October 31, 1932, at 10 o'clock a. m. The so-called plea in abatement, which in reality is a motion to quash the jury panel, was filed on October 31, 1932, and presented to the trial court when the cause was called for trial on that date. The court denied the motion, refused a hearing thereon, assigned the failure to present the same at an earlier date in compliance with the order of September 26 as a reason for its action and immediately began the proceedings to impanel the jury. No showing or offer of showing of a reasonable excuse for not presenting the motion prior to the date set for trial was made. The record does not show when or how the jury panel was drawn.

The state has made a motion in this court for a diminution of the record for the purpose of showing how and when the jury panel was drawn and this motion has been submitted with this cause. We treat the instrument mentioned, although designated on its face a "plea in abatement," as a motion to quash the panel as that is its nature and prayer. To do so is the more advantageous to the defendant, since the statute provides and this court has held that the plea of not guilty waives all defects which may be excepted to by plea of abatement. Comp. St. 1929, sec. 29-1811; *Green v. State*, 116 Neb. 635. The rule in question that was made by the court affected procedure only and did not affect jurisdiction of the subject-matter. Subject to conformity to constitutional and statutory limitations and provisions, courts have inherent power to make reasonable rules for the regulation of their practice and the conduct of their busi-

ness. 15 C. J. 901-915. Our attention has not been called to any provision of the Constitution or statute or to any court rule to which the rule in question is contrary. The making of the rule was known to the defendant and his counsel at the time made. Such rule may not deprive a person of a legal right secured by law, as it then becomes an unreasonable rule. The rule in question, under many sets of facts, could have the effect to deprive a defendant of a reasonable opportunity to avail himself of a legal right, and thus its enforcement be unreasonable, and under many sets of facts grant ample opportunity to enjoy every existing legal right, and thus its enforcement be reasonable. The defendant is the one best in position to know facts that cause the rule to deprive him of a reasonable opportunity to enjoy any legal right he may have, and the burden is therefore upon him, aided by matters apparent from the face of the record, to show cause why he has not complied with the rule, if he desires to prevent its enforcement. A court rule, at least such as the one in question, is not obligatory upon the court. 15 C. J. 911. It is of such a nature that it may be legally enforceable under one set of facts and not under another. Matters apparent from the record or a showing by the defendant as to why such a rule deprives him of a reasonable opportunity to enjoy a legal right is necessary to cause the enforcement of such a rule to be so unreasonable as to be error on the part of the court. No such showing, either by matters apparent from the record or by proof or offer of proof of facts extraneous thereto, is shown in this case and the court is not shown to have exercised power wrongfully in its enforcement. To place the burden of proof otherwise than as herein placed or to hold such a rule as herein involved unenforceable under any circumstances would aid unscrupulous practitioners in delaying and obstructing the administration of justice.

An additional reason why the trial court did not commit reversible error in overruling the challenge to the

array is that the pleading does not set forth any facts, even if true, that would justify an order quashing the panel. It contains four paragraphs. No fact pleaded in the first three paragraphs would cause the procedure of drawing the jury to be even irregular and the fourth paragraph is in its entirety a mere conclusion. No affidavit was filed in support of the motion, but an oral offer to prove all facts therein alleged was made. A motion of this kind must set out facts that show how the statute regulating the manner of drawing the panel was violated. *Nelson v. State,* 118 Neb. 812; *Strong v. State,* 63 Neb. 440.

The burden being upon the defendant, under the condition of the record in this case, to show how the rule of court requiring him to file any motions preliminary to trial before a specified date deprived him of a legal right, a diminution of the record as asked by the state in its motion is not necessary and such motion is overruled. Finding no reversible error in the record, the judgment of conviction and sentence is

AFFIRMED.