THE SUMMIT FIDELITY AND SURETY COMPANY OF AKRON, OHIO, A CORPORATION, ET AL., APPELLEES, V. FRANK G. NIMTZ ET AL., APPELLANTS.

64 N. W. 2d 803

Filed June 4, 1954. No. 33512.

*Edward F. Fogarty, Herbert M. Fitle, Bernard E. Vinardi,* and *Neal H. Hilmes,* for appellants.

*Eugene D. O'Sullivan,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The relators filed a petition in the district court for Douglas County praying forthwith for a writ of mandamus against the five judges of the municipal court of the city of Omaha and the chief of police of the city of Omaha requiring the respondents to cease enforcing municipal court rule No. 12; from barring the relators from carrying on their bonding business in the municipal court of Omaha; to accept the appeal bond tendered on behalf of Fred H. Goodhart by relators; and to nullify the proceedings against relators taken under rule No. 12 of the municipal court. On the same day the petition was filed, and without notice of any kind to the respondents, the district court issued a peremptory writ of mandamus as prayed. The respondents perfected appeal to this court from the order granting the peremptory writ of mandamus which was based solely upon the allegations of the petition.

The petition, insofar as it need be considered in this appeal, alleged in substance as follows: That the Summit Fidelity and Surety Company, an Ohio corporation, was qualified to do business in the State of Nebraska as a bonding and surety company, writing also bail bonds in criminal cases; that L. S. Cornett and Verna L. Cornett were residents of Omaha, Douglas County, Nebraska, who were licensed resident agents and attorneys in fact of the surety company; that George Vanous was a resident of Omaha, Nebraska, and an agent, servant, and employee of L. S. Cornett and Verna L. Cornett and as

such also transacted general bonding business for the surety company; and that on April 30, 1953, the judges of the municipal court of the city of Omaha passed and were enforcing rule No. 12 of the municipal court relating to professional bondsmen. This rule provides in part: "(a) A professional bondsman shall be deemed any person, corporation or agent thereof who receives directly or indirectly any fee, gain or reward as compensation for acting as surety on any recognizance required by law to be filed in any matter pending in this Court. (b) No professional bondsman shall be accepted as surety upon any recognizance unless authorized to act as surety by the Judges of this Court. (c) Any person desiring to act as professional bondsman shall make application for approval by the Judges, * * *," and then certain information as to assets, debts, criminal record, moral character, a list of employees and agents, and a list of all defaults is required to be furnished. There are other requirements, among which are: "(e) Bondsmen shall be excluded from inside the rail of the criminal court rooms and from the Judge's chambers except when their presence is necessary for official court business. (f) Neither bondsmen nor their agents shall loiter in the court room, corridors or elsewhere in or near Police Headquarters for the purpose of soliciting business or any other purpose. * * * (k) No bondsman shall at any time have access to the cell blocks or other places of detention in either the Central or South Side Police Headquarters. (1) Any bondsman who fails to meet any of the qualifications herein enumerated or who violates any of the laws of the United States, the State of Nebraska, or the Rules of this Court, shall after due notice and hearing be removed from the approved list of bondsmen." Then the rule makes reference to the bond schedule which need not be set out here.

The petition further alleged that, although applicants L. S. Cornett and Verna L. Cornett contended that rule No. 12 of the municipal court was without warrant or

authority in law, in an effort to promote harmony Verna L. Cornett sought to comply with the order of the court, and filed an application to be qualified by the municipal court as a professional bond writer in said court, and stated specifically in the application that L. S. Cornett would in no way, directly or indirectly, be identified, interested, or connected with said insurance writing in the Omaha police courts and would derive no benefits therefrom. The application was signed by Verna L. Cornett. This application was disapproved by the judges of the municipal court of the city of Omaha on April 30, 1953.

The petition further alleged that on May 1, 1953, the chief of police of the city of Omaha posted, or caused to be posted, in the police stations of Omaha a notice quoting the resolution of the judges of the municipal court of the city of Omaha. This notice referred to L. S. Cornett, professional bondsman, and was to the effect that he had been convicted of charges arising from his activities as a professional bondsman, which conviction had been sustained by the Supreme Court of this state, and also made reference to George Vanous, a business associate, agent, or employee of L. S. Cornett, and prohibited these persons from acting in any capacity in providing bonds of any nature in matters pending in the municipal court for Omaha, Nebraska, the prohibition to be effective from the date thereof and to continue until further order of the court. It was further ordered that L. S. Cornett and George Vanous, their associates, agents, and employees should not loiter in or about any of the courtrooms of the municipal court of Omaha, Nebraska.

By letter dated May 13, 1953, the application of Verna L. Cornett to act as a professional bondswoman in matters pending in the municipal court was disapproved by the judges of that court.

The petition further alleged that on July 17, 1953, the relators filed in the municipal court an application to

recall the order of May 13, 1953, and to annul the order of the court posted in the south side and central police stations on May 1, 1953, which was heard by the municipal court on July 24, 1953, and denied by it on August 28, 1953. On September 10, 1953, the relators, through their attorney, tendered to one of the judges of the municipal court an appeal bond for one Fred H. Goodhart which was refused by said judge because the municipal judges had agreed unanimously not to accept bonds of the relators.

The petition further alleged that relators were prevented from transacting any bail bond or any other bonding business in or through the municipal court by virtue of the unlawful and ultra vires acts and doings of the respondents, and that great and irreparable damage and injury was being caused to the relators without adequate remedy at law. The petition then alleged legal propositions affecting the legality of rule No. 12, which, insofar as necessary, will be referred to in the opinion.

The order of the district court, by the peremptory writ of mandamus, recited that the respondents attempted to regulate, hinder, and hamper the efforts of the relators to exercise their rights to carry on a bonding business pursuant to their having been duly qualified to do a general surety and bonding business by the Department of Insurance of the State of Nebraska, and had refused to vacate said rule and properly perform their legal duty in the premises by accepting relators' legal and proper bonds duly tendered to them. The command of the writ of mandamus appears previously in the opinion.

For convenience the parties will be referred to as relators and respondents.

The respondents assign as error that the peremptory writ of mandamus granted by the district court is contrary to law and should not have been issued against the respondents.

The judges of the municipal court may promulgate rules of procedure and practice in said court, not in conflict with the laws governing such matters. § 26-1,202, R. R. S. 1943.

In the case of Uerling v. State, 125 Neb. 374, 250 N. W. 243, this court said: "Subject to conformity to constitutional and statutory limitations and provisions, courts have inherent power to make reasonable rules for the regulation of their practice and the conduct of their business. 15 C. J. 901-915."

"While courts are very generally authorized by statute to make their own rules for the regulation of their practice and the conduct of their business, a court has, even in the absence of any statutory provision or regulation in reference thereto, inherent power to make such rules, subject to limitations based on reasonableness and conformity to constitutional and statutory provisions." 21 C. J. S., Courts, § 170, p. 261.

"Court rules of practice are adopted to facilitate the business of the court and to promote the orderly and expeditious administration of justice and for the benefit of the parties as well as for the benefit of the court." 21 C. J. S., Courts, § 170, p. 264.

This brings us to the proposition as to whether or not the business of professional bondsmen offering bonds before the municipal court of the city of Omaha is of such a nature that it is a business that may be regulated.

As stated in McDonough v. Goodcell, 13 Cal. 2d 741, 91 P. 2d 1035, 123 A. L. R. 1205: "Coming to the merits of the present application for the writ it must first be said without hesitation, that the conduct of a bail bond business is such a business as is subject to reasonable regulation under the police power of the state. The legislature has properly determined that abuses have arisen or may arise which make it necessary or desirable that there be some public supervision of that business."

In the case of Concord Casualty & Surety Co. v.

United States, 69 F. 2d 78, it is said: "The court is not without protection if the surety company is deemed a poor moral or unsafe risk. If the surety company should so conduct its business as to lose the confidence of the court or a judge thereof, the judge to whom an undertaking is submitted in any case for approval could refuse to approve it. * * * The District Court might by rule refuse to accept bonds of any named surety company. Like any other financial risk in giving an undertaking or guaranty, a moral risk as well as the material risk is involved."

State ex rel. Howell v. Schiele, 85 Ohio App. 356, 88 N. E. 2d 215, affirmed 153 Ohio St. 235, 91 N. E. 2d 5, was a case wherein the relator sought a writ of mandamus to compel the city treasurer to issue him a professional bondsman's license. The writ of mandamus was denied. The court said: "That the business of acting as a surety for pay upon court bonds, particularly in criminal cases, has a relation to the public safety and welfare we think is too clear for argument or extended citation of supporting precedents at this late date. A cursory examination discloses that in most, if not all, of the states recognition of this relationship has led to regulation of the calling in one form or another. * * * And so long as the regulation has a reasonable relation to the object to be accomplished and operates uniformly upon all pursuing the calling, it cannot be challenged, with success, as violating constitutional provisions guaranteeing due process of law and equal operation of the law."

In Jackson v. Beavers, 156 Ga. 71, 118 S. E. 751, the court said: "The business of professional bondsmen affords peculiar opportunity for fraud and imposition upon the persons whom they serve. Besides, such business may be so conducted as to seriously interfere with the fair and proper administration of the criminal laws. The unscrupulous may devise means and methods for the escape of violators of the penal statutes. They may use improper and illegal means to secure the acquittal

of their clients. For these and other reasons which could be given, this business comes within the police power of the State. Under this power the right of contract is not unlimited, but is subject to regulation."

It is true, as contended for by the relators, the regulation of professional bondsmen has been considered in the exercise of the police power by some states. This fact however is not conclusive that courts such as the municipal court of the city of Omaha would be barred from promulgating rules governing and regulating professional bondsmen offering bonds in such courts within the limitations prescribed by law as heretofore pointed out.

The fact that the Department of Insurance authorized the relators to do business in this state, and that L. S. Cornett and Verna L. Cornett are certified by the Department of Insurance as duly licensed resident agents of the Summit Fidelity and Surety Company, relator, does not make it mandatory that any court in the State of Nebraska accept any bond tendered in behalf of such company by such relators or their employees and servants. The acceptance and approval of bonds such as referred to in the instant case is a judicial function of the court. See § 29-901, R. S. Supp., 1953. See, also, Clark v. Lincoln Liberty Life Ins. Co., 139 Neb. 65, 296 N. W. 449.

We come to the principal proposition in this appeal, and that is whether or not the trial court erred as contended for by the respondents in granting the peremptory writ of mandamus.

Section 25-2159, R. R. S. 1943, provides: "When the right to require the performance of the act is clear, and it is apparent that no valid excuse can be given for not performing it, a peremptory mandamus may be allowed in the first instance. In all other cases, the alternative writ must be first issued; * * *."

Before the court is warranted in granting a peremptory writ of mandamus, it must be made to appear that

the relator has a clear legal right to the performance by the respondent of the duty it is sought to enforce, and that nothing essential to that right will be taken by intendment. See State ex rel. Niles v. Weston, 67 Neb. 175, 93 N. W. 182.

It is only when there is no room for controversy as to the right of the applicant, and when from the nature of the facts set forth in the supporting affidavit a court can take judicial knowledge that a valid excuse is impossible, that a peremptory writ may issue without notice. See, State ex rel. Platte Valley Irr. Dist. v. Cochran, 139 Neb. 324, 297 N. W. 587; State ex rel. Chicago & N. W. Ry. Co. v. Harrington, 78 Neb. 395, 110 N. W. 1016.

As stated in Horton v. State ex rel. Hayden, 60 Neb. 701, 84 N. W. 87: "This statute undoubtedly provides for the issuance of the peremptory writ without notice where the court or judge can clearly see that the refusal of the respondent to perform some duty resulting from his office, trust or station, can admit of no possible justification. Cases may· arise in which the refusal of a public officer to discharge an official duty is so obviously inexcusable and the necessity for prompt action so imperative that notice must be dispensed with in order to prevent a failure of justice." See, also, State ex rel. Platte Valley Irr. Dist. v. Cochran, *supra.*

A peremptory writ of mandamus should be issued only where the legal right to it is clearly shown. See, State ex rel. Evans v. Brown, 152 Neb. 612, 41 N. W. 2d 862; State ex rel. Bates v. Morgan, 154 Neb. 234, 47 N. W. 2d 512; State ex rel. Bintz v. State Board of Examiners, 155 Neb. 99, 50 N. W. 2d 784.

The relators' petition does not establish a clear legal duty on the part of the respondents; it does not preclude a valid excuse or possible justification on the part of the respondents; it does offer issues of fact; it does not establish an imperative necessity for prompt action; and it does permit of dispute and controversy. Accordingly,

a peremptory writ of mandamus could not be granted under the above-cited statutes of the state and under the foregoing decisions of this court. The peremptory writ of mandamus afforded no opportunity to establish the need and necessity for the rule here in question, the abuses sought to be eliminated thereby, and the reasons for excluding relators from a professional bond business before the court. It did not afford opportunity to present law determining the extent of the judicial discretion and the court's authority and power in such matters.

Where there are allegations of fact which for their existence depend on proofs to be introduced on the hearing or trial, the peremptory writ of mandamus may not issue, as we construe section 25-2159, R. R. S. 1943. See Mayer v. State ex rel. Wilkinson, 52 Neb. 764, 73 N. W. 214.

The relators make reference to an appeal bond tendered to a judge of the municipal court which was refused by the judge apparently in conformity with the rule in question. In any event, the person for whom the bond was tendered is not a party in this mandamus proceeding. Section 25-301, R. R. S. 1943, provides that every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 25-304, R. R. S. 1943. The exceptions stated in section 25-304, R. R. S. 1943, are in no way applicable to this person.

Other matters have been raised on this appeal which need not be determined in view of our holding.

It is not the function of this court, under the circumstances presented in this appeal, to pass upon the validity of the rule in question.

The conclusion reached renders it not only unnecessary but improper for us to pass upon the constitutionality of the rule promulgated by the municipal court of the city of Omaha. It is a general rule that courts will not pass upon the constitutionality of a statute, or

a rule such as appears here, unless it becomes necessary to a proper disposition of a case properly pending before the court. Since the proceeding instituted in the district court was not the proper remedy to review the validity of the rule in question, the constitutionality of the same was therefore not properly before this court for decision. See State ex rel. Garton v. Fulton, 118 Neb. 400, 225 N. W. 28.

The district court erred in granting the peremptory writ, and its judgment awarding the writ is reversed, the writ quashed, and relators ordered to pay all costs.

REVERSED.