STATE OF NEBRASKA EX REL. CLARENCE S. BECK, ATTORNEY GENERAL, APPELLEE, V. CHICAGO, ST. PAUL, MINNEAPOLIS AND OMAHA RAILWAY COMPANY, A CORPORATION, APPELLANT.

81 N. W. 2d 584

Filed March 8, 1957. No. 34097.

*Neely, Otis & Neely,* for appellant.

*Clarence S. Beck,* Attorney General, and *Homer G. Hamilton,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action wherein the State of Nebraska on relation of Clarence S. Beck, Attorney General, plaintiff and appellee, filed a petition in the district court for Thurston County, Nebraska, wherein a peremptory writ of mandamus was prayed against the Chicago, St. Paul, Minneapolis and Omaha Railway Company, a corporation, defendant and appellant. The pertinent substance of the petition and of the prayer will be set out later herein.

The peremptory writ was allowed. From the allowance of the writ the defendant has appealed to this court. It contends that the writ was issued without legal grounds or authority. Assignments of error which it contends are grounds for reversal are four in number. The statement of them or such of them as require consideration will be made hereinafter at the time they are considered.

By the petition it was alleged that the Nebraska State Railway Commission, which will hereinafter be referred to as the commission, a constitutional body with power to regulate rates and service and with general control of common carriers, on April 8, 1908, adopted General Order No. 11 which provides that no carrier operating local freight or passenger trains between stations in Nebraska shall discontinue any such train service or change time schedules until application has been made to the commission and its permission received to make such change; that on January 27, 1908, the commission legally adopted General Order No. 6 which provides that no carrier operating local freight or passenger trains between stations in Nebraska shall remove or abandon any switches or spurs in use in this state without the consent of the commission; that on April 26, 1950, an order was issued by the commission permitting the defendant, a common carrier operating a line of railway between Sioux City, Iowa, and Omaha, Nebraska, and intermediate and adjacent points in Nebraska, to operate triweekly mixed train service between Omaha and Sioux City; that the schedule provides for alternate daily service as follows: Departure from Sioux City on one day at 8:30 a.m. and arrival in Omaha at 6:30 p.m., and from Omaha the next day at 7:30 a.m. with arrival at Sioux City at 5 p.m.; that this service was discontinued on or about July 18, 1950, and since that time there has been no resumption of that service; that permission has never been granted for the discontinuance of the service by the commission; that since that time triweekly service has been maintained only from Omaha to and from Pender, Nebraska; that the character of service southward from Sioux City, if any, is not known; that the reason for the discontinuance of service north from Pender was damage by flood to a railroad bridge located about 1½ miles north of Pender which the defendant was required to keep in repair and to repair and make usable in case of damage thereto;

that after July 18, 1950, demand was made for restoration of the service with which demand the defendant has never complied; that in May 1956 the defendant substituted biweekly for triweekly service between Omaha and Pender without permission from the commission; that the defendant had refused and neglected to make necessary repairs to the bridge referred to and to restore the service, contrary to the exactions of General Order No. 11; and that the defendant has violated General Order No. 6 in regard to abandonment of switches. No particulars as to abandonment of switches are set forth in the petition.

The prayer of the petition is for a peremptory writ of mandamus requiring the defendant to operate said line of railroad in accordance with the order of the commission entered on April 26, 1950, until such time as it shall obtain permission of the commission to discontinue or change the service; to further require it to do and perform any and all acts necessary to furnish such service; and for such other and further relief as may be just and equitable.

On June 8, 1956, the cause came on for hearing on the petition and affidavit of the Attorney General without notice of any kind to the defendant and the following order was entered by the court:

"IT IS THEREFORE CONSIDERED, ORDERED AND DECREED BY THE COURT that a peremptory writ of mandamus forthwith issue, requiring the defendant to operate trains #15 and #16 between Omaha, Nebraska, and South Sioux City, Nebraska, on a through and continuous line of railroad as set out in the order of the Nebraska State Railway Commission entered April 26, 1950, in application number 17924, and to reinstate the same service that existed under its line of railroad between Omaha and South Sioux City prior to July 18, 1950. It is further ordered that the defendant shall within a reasonable time make any needed repairs necessary to carry out the provisions of this order.

"It is further ordered that such service shall be conducted by the defendant until such time as it complies with General Order No. 11 of the Nebraska Railway Commission and receives permission to discontinue any of such services."

The first error assigned as ground for reversal is that: "The trial court erred in issuing a peremptory writ of mandamus without notice to the defendant or an opportunity to be heard."

Two types of writs of mandamus are recognized and defined by the statutes of this state. They are peremptory and alternative. § 25-2158, R. R. S. 1943. The one of primary concern in this case is the peremptory writ. As to the peremptory writ, section 25-2159, R. R. S. 1943, contains the following: "When the right to require the performance of the act is clear, and it is apparent that no valid excuse can be given for not performing it, a peremptory mandamus may be allowed in the first instance. In all other cases, the alternative writ must be first issued; * * *."

As to the alternative writ, section 25-2158, R. R. S. 1943, contains the following: "The alternative writ must state concisely the facts showing the obligation of the defendant to perform the act, and his omission to perform it, and command him, that immediately upon the receipt of the writ, or at some other specified time, he do the act required to be performed, or show cause before the court whence the writ issued, at a specified time and place, why he has not done so; * * *."

This court in varying terms but with a single meaning and purpose has clearly set forth the necessary conditions antecedent to the right and power of courts, within the meaning of the statute, to issue writs of mandamus without notice and without affording defendants an opportunity to resist the issuance of a peremptory writ of mandamus. From this there has never been a departure.

In a syllabus point in Horton v. State ex rel. Hayden,

60 Neb. 701, 84 N. W. 87, it was said: "No person can be deprived of his property or other valuable right by the exercise of judicial or other governmental power, without notice to such person and reasonable opportunity to be heard in his defense."

In State ex rel. Niles v. Weston, 67 Neb. 175, 93 N. W. 182, it was said: "The rule is that before the court is warranted in granting a mandamus it must be made to appear that the relator has a clear legal right to the performance by the respondent of the duty which it is sought to enforce, and that nothing essential to that right will be taken by intendment."

In State ex rel. Chicago & N. W. Ry. Co. v. Harrington, 78 Neb. 395, 110 N. W. 1016, it was said: "It is only where there is no room for controversy as to the right, and where from the nature of the facts set forth in the affidavit the court can take judicial knowledge that a valid excuse is impossible, that a writ may issue without notice."

In that opinion it was also said relative to a situation where a peremptory writ is sought but the right to its issuance is not clear: "Under these provisions an alternative writ, and not a peremptory writ, should be issued in the first case, or, if a peremptory writ is applied for, a notice to show cause why it should not issue should be given and a hearing had before its issuance."

In State ex rel. Platte Valley Irr. Dist. v. Cochran, 139 Neb. 324, 297 N. W. 587, it was said: "When it does not clearly appear that a valid excuse cannot be given, a court has no power to issue a peremptory writ of mandamus without notice, and a writ so issued is void."

In Summit Fidelity & Surety Co. v. Nimtz, 158 Neb. 762, 64 N. W. 2d 803, which was a case wherein a peremptory writ of mandamus was issued without notice, this court, in reviewing with approval the cases which have been cited herein and others of like import, said: "Before the court is warranted in granting a peremptory

writ of mandamus, it must be made to appear that the relator had a clear legal right to the performance by the respondent of the duty which it is sought to enforce, and that nothing essential to that right will be taken by intendment."

We think an all inclusive summary of these pronouncements is the following: It is only where there is no room for controversy as to the right, and where from the facts set forth in the affidavit on which an application for a peremptory writ of mandamus is based the court can take judicial knowledge that a valid excuse is impossible, that a writ may issue without notice.

The defendant by the first assignment of error insists that the issuance of the writ in this case was contrary to this principle and that the writ is therefore void. It insists that the petition and affidavit do not preclude the existence of a valid excuse or excuses for the failure of the defendant to perform that which the plaintiff seeks to compel. In fact it points in its brief to questions of law and of fact which it contends require consideration and determination before the court could decide upon the propriety of the issuance of a writ of mandamus.

The questions suggested are: Were General Orders Nos. 6 and 11 violated as alleged? Did the destruction of the defendant's track and bridge by floodwaters in 1950 constitute a violation of General Order No. 11? Can a railway company change a freight schedule without violating General Order No. 11? Is the plaintiff entitled to a writ of mandamus to compel the restoration of through service on the Pender line after a lapse of 6 years? Did the railway company "abandon" switches along the Pender line in violation of General Order No. 6?

Clearly two questions of fact were suggested concerning which it could not be said that there was no room for controversy or which could be determined on the basis of judicial knowledge. They were that of

whether or not General Orders Nos. 6 and 11 had been violated and that of whether or not there had been an abandonment of switches.

Obviously a possible legal controversy existed as to obligation of the defendant to restore the bridge in the light of the fact that its condition resulted from natural causes; as to whether or not the statute of limitations had any application in view of the facts alleged as to the period of the existence of the condition on which the application was based; and as to whether or not the court had any power of adjudication as to schedules. Also it is obvious that there was a possible legal and factual controversy as to whether or not abandonment had been authorized by the Interstate Commerce Commission and the effect thereof if abandonment had been so granted. This last is true in the light of the rule, concerning which there appears to be no dispute, that abandonments authorized by the Interstate Commerce Commission are binding on the states.

As pointed out in the cases cited, the question to be considered in determining whether or not a peremptory writ of mandamus should issue is not that of whether there are or were facts which would operate to defeat the relief sought by the plaintiff, but rather that of whether or not speculatively there was room or basis for controversy.

Speculation is permissible in this connection, as has been made clear by the opinion in State ex rel. Platte Valley Irr. Dist. v. Cochran, *supra*. That case was one where the propriety of the issuance of a peremptory writ of mandamus, without notice, to require release of water for irrigation was under consideration. After stating the legal principle this court, by way of illustration of its purport and effect, said: "We think the allegations of the affidavit and petition admit of controversy. In the first place, relator's appropriation can be taken only from the natural flow of the stream during the irrigation season. It is altogether possible that the

waters behind the public power company's diversion dam were accumulated during the nonirrigation season, in which relator would have no right by virtue of his appropriation. It is likewise possible that a usable quantity of water might not reach relator's headgate, even if the water were released in accordance with the writ. Other persons, not parties to the suit, might well have interests superior to those of relator, which respondents are obligated to protect. In such cases, where it is impossible for the district court to have knowledge that no valid excuse could be given for not performing the alleged duty, no power exists to issue a peremptory writ without the respondent having been notified of the pending proceedings."

The plaintiff contends substantially that the defendant may not be heard to complain that the writ was issued without notice since it had the right to move in the district court to have it set aside and to have a hearing there on its motion. The reliance in this respect rests upon State ex rel. Spillman v. Chicago & N. W. Ry. Co., 112 Neb. 176, 198 N. W. 670. This case does not support the contention.

In that case a peremptory writ of mandamus was issued without notice in an original action in this court. By recital in the opinion in that case it appears that the propriety of the issuance of the writ was attacked by motion and that evidence was submitted, the order modified, and the motion to vacate the peremptory order was overruled. There is nothing in the opinion the effect of which is to say that the defendant in a case wherein a peremptory writ of mandamus has been issued without notice waives the right of appeal from the issuance of the writ by failure to seek to have it set aside by the court which issued it.

The conclusion reached in the light of these observations is that, as contended by defendant, the court erred in issuing the peremptory writ of mandamus without

notice. This conclusion renders unnecessary a consideration of the other assignments of error.

It follows that the judgment of the district court should be and it is reversed.

REVERSED.