Hillsborough,
No. 5457.

**JOHN DOE** *& a. v.* **THOMAS F. O'BRIEN** *& a.*

Argued January 5, 1966.
Decided February 28, 1966.

*Sullivan, Gregg & Horton* ( *Mr. James L. Sullivan* orally ), for the plaintiff.

*William Maynard,* Attorney General, *William J. O'Neil,* Assist-

ant Attorney General and *Emile R. Bussiere,* county attorney (*Mr. Bussiere* orally), for the defendant.

BLANDIN, J. The sole question transferred is whether the plaintiff is illegally detained in jail because the clerk of the Superior Court of Hillsborough county refused to accept a bail bond in the sum of $3,000. This was tendered by the Stuyvesant Insurance Company, which the parties agree is not registered as a "professional bondsman," under RSA 598:2. No issue is raised as to the adequacy of the amount of the bond or the company's status as a professional bondsman if the statute is applicable.

The parties have also agreed that Stuyvesant is solvent, with a sizeable surplus, and that it is licensed as a foreign insurance company to transact "business as surety on obligations" in this state, having complied with "all laws relating to foreign insurance companies" as provided by RSA 416:7.

The first contention advanced by the plaintiff is that RSA ch. 598 was not intended to apply to corporate sureties. The pertinent sections of this chapter provide as follows:

"1. DEFINITION. Any person who makes a business of furnishing bail in criminal cases and receives money or other compensation therefor shall be deemed a professional bondsman.

"2. REGULATIONS. Every professional bondsman, before engaging in such capacity in any county, shall register in the office of the clerk of the superior court for that county. He shall pay a registration fee to be fixed by the clerk and shall furnish the clerk a statement under oath of his financial responsibility. In the event of any change in that responsibility he shall immediately inform the clerk of such change. The clerk shall furnish to all officers in the county having authority to accept bail the names of all persons registered as professional bondsmen and shall notify such officers of any change in a bondsman's status.

"3. AFFIDAVITS REQUIRED. Professional bondsmen shall take oath to the sufficiency of their security when furnishing surety for recognizances of persons charged with a criminal offense. Forms for that purpose shall be furnished by the superior court . . . .

"5. FEE OR COMMISSION. In no instance shall a professional bondsman charge for his commission or fee more than five per cent of the amount of bail furnished by him; and the maximum that he may charge in any case shall be one hundred dollars.

"6. PENALTY. Failure to comply with any of the provisions

of this chapter shall be punishable by a fine not to exceed one hundred dollars or imprisonment for thirty days, or both."

The word "person" used in section 1, *supra*, is inclusive ( RSA 21:9 ) and properly includes corporations as well as individuals. *Bi-Rite, Inc.* v. *Concord*, 101 N. H. 291, 293; see also, *Opinion of the Justices*, 93 N. H. 478, 482.

One of the main objectives of chapter 598 was to insure the constant solvency of bondsmen, as shown by the provision in section 2 that the bondsman must "immediately" notify the clerk of court of any change in his financial condition. The evil consequences which might arise from irresponsible corporate sureties are no less to be guarded against than those which might result from irresponsible individuals. Another important purpose of the legislation was to prevent the abuses arising from the exorbitant rates which might be charged to those desiring bail. The need for such protective legislation in this area has been made abundantly clear by exhaustive surveys which disclosed long standing and manifold abuses. Freed and Wald, Bail in the United States, 1964, *pp.* 34-37.

That the State under its police power may regulate the subject of bail is axiomatic. *Summit Fidelity & Surety Co.* v. *Nimtz*, 158 Neb. 762; 8 Am. Jur. 2d, Bail and Recognizance, *s.* 7; Annot. 123 A.L.R. 1215. In the present case, we are convinced that they intended to do so.

The plaintiff relies upon RSA ch. 416 in arguing that the company in complying with this chapter and "all laws relative to foreign insurance companies and their agents" and having been licensed to carry on insurance business in New Hampshire, as required by RSA 416:7, had done all that was necessary to qualify it to become a surety on bail bonds. This and related legislation apparently relates to civil matters. See RSA 401:1 VII; RSA 405:1; RSA ch. 414. It does not mention or refer to criminal cases. RSA ch. 598, on the other hand, deals exclusively with criminal cases.

This chapter and those concerning civil matters are not in any sense inconsistent. They cover different subjects. Statutes governing the obligations of sureties in civil matters and those dealing with criminal cases may both be in operation in the same jurisdiction and often are. *Summit Fidelity & Surety Co.* v. *Nimtz*, 158 Neb. 762; *State* v. *Fishman*, 2 Conn. Cir. 83, certification denied 150 Conn. 726.

The case of *Fidelity Co.* v. *Linehan*, 70 N. H. 395, cited by

the plaintiff, was decided in 1900, many years before the passage of RSA ch. 598, which originated in Laws 1927, *c.* 32. The *Fidelity* case furnishes no authority now to support the plaintiff's position. It follows from what we have previously said that the claim that the insurance company was properly licensed to serve as a professional bondsman cannot prevail.

The plaintiff further urges that should it be found that chapter 598 applies, it "is a matter solely between the State and the persons regulated" that it does not affect him in any manner, and that therefore the clerk of court should have accepted the bond. We are unable to agree. The language of section 2 is positive and clear. It demands that the bondsman fulfill certain requirements "before engaging" in the business of acting as surety in criminal cases and imposes certain duties upon the clerk of court. It plainly implies that unregistered professional bondsmen, or those not financially responsible shall not be acceptable as sureties. The plaintiff has submitted no authority which would authorize the clerk to accept the tendered bail in defiance of the statutory command, nor are we aware of any. In short, upon this phase of the matter, we hold that since RSA ch. 598 applies to a corporate surety, the clerk could not properly accept the bond absent the fulfillment of the requirements of this chapter.

The plaintiff further takes the position that he has an "absolute right to bail and failure to accept the surety on his bond is a *de facto* deprivation of this right." He relies upon RSA 597:1, which provides: "All persons arrested for crime shall, before conviction, be bailable by sufficient sureties." He urges that this right is supported by our Constitution, Part I, Article 33rd and by the Eighth Amendment to the Constitution of the United States. Article 33rd of our Constitution merely provides that no "excessive bail or sureties" shall be demanded. The Eighth Amendment to the United States Constitution also says that "Excessive bail shall not be required . . . . " We find nothing in any of the above statutory or constitutional provisions which requires that bail be accepted from a surety who has not fulfilled our statutory mandate.

It has been urged that the inadequacy of the fee schedule in RSA 598:5 renders the legislation unconstitutional. This question does not appear to be raised by the reserved case nor in the issues set forth as relied upon by the parties in the agreed statement of facts. There is no evidence before us that the reason for the surety company's refusal to register under section 2, *supra,*

was because of section 5, nor are we afforded any figures or statistics upon which to base a judgment. In all the circumstances, this issue does not appear to be properly before us, and we decline to pass upon it.

The plaintiff's final argument that since RSA ch. 598 has not been enforced in Hillsborough county or elsewhere in the state so far as appears, it cannot now be applied against him without violating his Fourteenth Amendment rights, does not require extended consideration. The failure to enforce a law neither repeals it nor sanctions disobedience of it. *District of Columbia* v. *Thompson,* 346 U. S. 100, 114-115; 82 C. J. S. 506.

We fully realize that the statute in its present form may make it extremely difficult for defendants desiring bail to obtain surety company bonds. The problem is plainly in need of legislative re-examination in the light of present-day conditions.

*Exception overruled.*

All concurred.