**STATE ex rel., HOWELL, Relator, v. SCHIELE, Respondent.**

Ohio Appeals, First District, Hamilton County.

No. 7123.   Decided July 5, 1949.

William F. Hopkins, Cincinnati, for Relator.

Henry M. Bruestle, James W. Farrell, Cincinnati, for Respondent.

## OPINION

By MATTHEWS, J.:

In this action the relator invokes the original jurisdiction of this court in mandamus to compel the respondent, the Treasurer of the City of Cincinnati, to issue to him a license to conduct the calling of a professional bondsman in accordance with Section 722-2 of the municipal ordinances, which reads as follows:

"Any responsible person or firm may obtain from the City Treasurer, a license to do business as a professional bondsman on payment of an annual license fee of one hundred dollars ($100.00) and the furnishing of a surety bond in accordance with the provisions of Section 722-2a. All licenses issued hereunder shall expire on December 31 of the year in which they are issued, provided that, between December 15 and December 31, renewal licenses may be issued for the ensuing year. If a licensee's surety bond shall for any reason become ineffective, the license shall be suspended and of no effect, unless and until a renewal bond or a new bond shall be furnished in accordance with Section 722-2a."

By another section of the same ordinance, the city manager is given supervision over professional bondsmen, with power to revoke the license of any one found guilty by him of extortion or dishonesty in connection with such business. Their fees are also prescribed.

By answer, the respondent admitted that he had refused to issue a license and pleaded in justification that the relator did not possess the qualifications imposed as a condition to the issuance of a license in that he was not a responsible person within the meaning of the terms of Section 722-2 of the municipal ordinances.

At the trial it was conceded that the relator had complied with all the conditions for the issuance of a license unless the respondent was justified in refusing on the ground that relator was not a responsible person.

Upon the subject of the relator's character it was stipulated that on the 12th day of January, 1949, he had been convicted of the offense of making false statements for the purpose of defrauding the United States in violation of Section 72 of Title 18 of the United States Code, and of making false statements under oath for the purpose of obtaining bond in violation of Section 231 of Title 18 of the United States Code, and on the 25th day of June, 1947 he had been convicted of the offense of attempting to evade his income tax, in violation of the United States income tax law. It was also stipulated that he had been convicted twice of the offense of possession of untaxed intoxicating liquor and once of the offense of unlawful possession of intoxicating liquor without a permit.

It also appeared that the relator had been issued a license for the previous year and had deposited $2000.00, as required by the ordinances. At the time the present application for a license was denied seventeen actions were pending on forfeited bonds signed by relator, and that the respondent was holding the deposit against the final disposition of those cases. It was admitted that relator had satisfied all judgments rendered against him on forfeited bonds. Whether, or to what extent, he was cooperative in the apprehension of accused and in securing their appearance was not disclosed.

From this recital of the facts it has become apparent that this is not a case in which an accused person is complaining that he has been denied bail or that excessive bail has been required. **Section 9 of Art I of the Ohio Constitution,** which provides that all persons shall be bailable by sufficient sureties except for capital offenses where the proof is evidence or the presumption great, and that excessive bail shall not be required has no application.

It is apparent also that this is not a case where the relator is presented as a non-compensated surety on a bail bond in a specific case and his qualifications as a surety on that bond

are being weighed and determined, and the claim is made by the accused that the relator's rejection as a surety would have the effect of depriving him of his liberty without due process of law. Whether that would raise a different issue we are not called upon to determine.

The question presented in this case on the evidence is whether the respondent is under a non-discretionary duty to issue to the relator a license to carry on the calling of a compensated bondsman in civil and criminal courts sitting within the City of Cincinnati.

That the business of acting as a surety for pay upon court bonds, particularly in criminal cases, has a relation to the public safety and welfare we think is too clear for argument or extended citation of supporting precedents at this late date. A cursory examination discloses that in most, if not all, of the states recognition of this relationship has led to regulation of the calling in one form or another. Requiring a permit upon compliance with certain conditions, and supervision by an administrative officer are familiar methods. And so long as the regulation has a reasonable relation to the object to be accomplished and operates uniformly upon all pursuing the calling, it cannot be challenged, with success, as violating constitutional provisions guaranteeing due process of law and equal operation of the law.

Now what is the purpose sought to be accomplished by requiring those charged with crime to give bail as a condition of being given their liberty during the pendency of the proceeding?

While the penalty prescribed is a sum of money for violation of the condition, that condition in a criminal bail is in substance that the accused shall be present whenever wanted to answer the charge and abide the judgment of the court.

It is the presence of the accused, and not the money of the surety that is desired. In 6' Am. Jur., 88, it is said:

"It would appear that a recognizance or bail bond in general binds to three things: (1) to appear and answer either to a specified charge or to such matters as may be objected, (2) to stand and abide the judgment of the court, and (3) not to depart without leave of the court. The duties and obligations in these respects are distinct and independent. The extent of the duty and obligation of the sureties, therefore, is to see to it that the principal, at all times during the term of the court to which he is bound to appear, is present to answer the call of the court and to do

what the law may require of him. If they fail in this respect, they have not kept him under the power of the court as if he had been in the custody of its proper officer. It must not be inferred that the surety is thereby required to do something not stipulated in his bond, for the obligation thus imposed is nothing more than what the law reasonably considers to be within the condition of his undertaking."

And, in 5 O. Jur., 5, it is stated that bail "has been defined in Ohio as the delivery of a person to his sureties, upon their giving, together with him, sufficient security for his appearance, he being supposed to remain in their friendly custody instead of going to jail."

The obligation of the surety to produce the accused is recognized by the statutes. Upon failure of the accused to appear, the surety is notified to appear "and produce the body of the defendant or show cause why judgment should not be entered." Sec. 1343-18 GC.

That being the effect of releasing an accused upon bail it would seem that government would be justified in considering more than the financial ability of the proffered surety in determining his acceptability. We find that the judicial department has deemed itself bound to require more than mere proof of ability to respond to the penalty. In United States v. Simmons, 47 Fed. 575 (14 L. R. A. 78) the Court rejected a bail bond on the ground that the surety had been fully indemnified and therefore had no incentive to "take care that the condition of the recognizance is performed." And at page 79 of 14 L. R. A., the court said: "Bail when accepted in criminal cases, becomes in law the custodians of the persons for the court: They have the right and are charged with the duty to arrest the prisoner in case he contemplates flight. The court looks to their vigilance to secure the attendance and prevent the absconding of the delinquent." In (69 Fed. (2d.) 78) 91 A. L. R. 885, the court held as stated in the syllabus of the last-named report that: "A Federal Court deeming a surety company a poor moral or unsafe risk may refuse to approve an undertaking to which such company is a party, and may direct the clerk of the court to do likewise." That was held in a case in which the agents of the surety company were suspected of conspiring with convicted persons to have others impersonate them and serve prison terms for them.

In United States v. Lee, 170 Fed., 613, the Court at 614 said:

"When indemnitors are not acting in good faith, and their purpose is to substitute the recognizance and the indemnity

for the person of the accused and thereby enable him to flee from justice, the court or committing magistrate should not accept the recognizance."

And, at page 615:

"When the circumstances point to bad faith on the part of the indemnitors, the right to bail guaranteed by section 1015, Rev. St. (U. S. Comp. St. 1901, p. 718), to an arrested party, does not prevent the court, in the exercise of a sound discretion, from rejecting sureties who, however honorable they may be, become sureties from purely business reasons and apparently without assuming any of the responsibilities which the law imposes."

By §13435-1 GC, it is provided that a proffered surety must file an affidavit of justification as to any existing bonds or unsatisfied judgments or executions thereon, and, "He may also be required to state any other fact which the court deems relevant and material to a correct determination of the sureties' sufficiency to act as bail."

So, we conclude, that the law of Ohio as elsewhere is that in determining the sufficiency of a surety the courts have a sound discretion to determine not only his financial ability to respond to the penalty in the bond but also his moral responsibility in reaching a conclusion as to whether the bail will insure the presence of the defendant.

We have found one case only in which the constitutionality and interpretation of a statute requiring a license to engage in business as a professional bondsman have been considered and that is the case of McDonough v. Goodcell 91 Pac. (2d) 1035. The legislature of California enacted a law regulating the bail bond business and prohibited the carrying on of the business without a permit and authorized the insurance commissioner to issue permits upon proof that the applicant was "a fit and proper person to engage in such business." After a hearing at which conflicting evidence was introduced the commissioner found that the applicants (two partners) "were not persons of good moral character and that they were not fit and proper persons to engage in the bail bond business," and refused to issue a permit. Some of the derogatory testimony was based on acts committed prior to the enactment of the law and that was assigned as error. The action was in mandamus to require the commissioner to issue the permit.

The court sustained the constitutionality of the law and the action of the commissioner thereunder, and denied the writ

of mandamus. The opinion is lengthy. Many cases are cited and commented upon At page 1040 the court said:

"A survey of the foregoing authorities discloses that it is the settled general rule of law in this state that where the legislature has by statute clothed an administrative officer with power to ascertain the facts with reference to the fitness of an applicant for a permit to engage in a business subject to regulation under the police power and has vested in such officer the discretion, based on the facts ascertained, to grant or deny a permit to engage in such business the courts will not interfere with the exercise of such discretion except in the case of an abuse thereof."

So, we conclude that, not only the financial but also the moral qualification of a surety upon a bail bond is a matter of public concern, subject to regulation under the police power and that those pursuing the calling of professional bondsmen for compensation are likkewise subject to regulation.

That leaves but one other question in this case and that is— Has the City of Cincinnati by its ordinance prescribed a moral as well as a financial qualification for professional bondsmen and clothed the City Treasurer with the authority to determine the possession of such qualification—in the exercise of a sound discretion?

Recurring to the terms of the ordinance, it will be noted that it limits the issuance of permits to "responsible persons". That is a prerequisite In addition to being a responsible person the applicant must furnish a bond in a sum not less than $1000.00 adequate to cover at all times the total of all outstanding undischarged bail bonds, etc. From this we draw the inference that the professional bondsman must present something more than an adequate bond, for if payment of the penalties was all that was desired the bond would suffice regardless of whether the permit holder was responsible or irresponsible.

One of the definitions given by Webster for responsible is "trustworthy, financially or otherwise." To determine its meaning in any given case, its connotation must be considered. To be trustworthy means faithful to the trust reposed whatever the trust may be.

Now what is the trust reposed in the surety upon a bail bond? It is not primarily to respond in money to the extent of the penalty. His primary obligation is to produce the defendant in court to abide the judgment of the court. It is

only on his default in the performance of this primary duty that the obligation to pay matures. Trustworthiness in answering to this duty to produce the person of the defendant is the sense in which the phrase "responsible person" is used in this ordinance.

We are fortified in our interpretation of this language by the other provision of the ordinance giving the City Manager supervision over professional bondsmen with authority to direct the City Treasurer to revoke the license of any such bondsman found guilty of dishonesty in connection with such business. Betrayal of the trust reposed to produce the defendant certainly would be classed as dishonesty. Certainly, ground for the revocation of the license would be sufficient reason for refusal to grant the license in the first place.

When it is considered that the relator has stipulated that he has been convicted five times of violating the law, two of which violations involved fraud and perjury, it is not difficult to conclude that the respondent had ample basis for his conclusion that the relator was not a responsible person within the meaning of the ordinance and did not possess the qualifications required to act as custodian for the court of persons charged with crime, bound first and foremost with the duty of so acting as to insure that the accused would respond when called.

Where discretion is lodged in an official, where he is required to decide on conflicting evidence, or to choose between conflicting inferences, a writ of mandamus may issue to compel a decision, but not a particular decision. Sound discretion cannot be controlled by mandamus. It is only where there is an abuse of discretion that the writ will issue in such cases, in other words, where there is no place for the exercise of discretion under the circumstances. 25 O. Jur., 1131, et seq.

For these reasons, the writ of mandamus is denied, and the petition dismissed.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.