364 So.2d 558 (1978)
STATE of Louisiana
v.
Daisy ARMSTRONG et al. (Roger Williams Insurance Co.).
No. 63271.
Supreme Court of Louisiana.
November 2, 1978.
Dissenting Opinion November 21, 1978.
*559 Tucker & Schonekas, Gibson Tucker, Jr., Peter J. Castano, New Orleans, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Ralph Capitelli, Fredericka Homberg, Louise S. Korns, Asst. Dist. Attys., for plaintiffs-respondents.
TATE, Justice.
At the instance of the surety on certain bail bonds, we granted certiorari, 363 So.2d 911, to review certain rulings made by the district court with regard to bail bonds by this defendant.
We consider the primary and dispositive issue before us to be whether, in a criminal prosecution, the trial court may entertain a collateral attack upon the legal qualifications of a surety company which has issued a bail bond for the release of an accused defendant, when that company is authorized by the commissioner of insurance to do business in Louisiana and thus is authorized by La.C.Cr.P. art. 323 to become surety for the release of a criminally accused person on bail.
Context Facts
The undisputed showing is that the surety ("Roger Williams") was issued a certificate of authority to do business in Louisiana by the Louisiana commissioner of insurance, upon that official's determination that the company possessed the qualifications and assets required by applicable law and regulation to become surety on bail bonds. (The district attorney contends, however, that the commissioner was in error in so doing, and that the company did not in fact possess the legally required qualifications and assets.)
The issue was raised by the district attorney in this manner in the Criminal District Court for Orleans Parish:
In five criminal cases in which the four individuals charged had been released under an appearance bond with Roger Williams as surety, the prosecutor filed a "Rule to Show Cause Why New Or Additional Security Should Not Be Posted." The prayer of each of the rules prayed only that Roger Williams and its agent show cause why new or additional security should not be posted.
The allegations upon which this relief was founded do not set forth any improper conduct by Roger Williams in the performance of its functions with regard to bail bonds, or any unlawful or immoral conduct with regard to its conduct in Orleans Parish. Instead, the prosecutor alleges certain alleged deficiencies in the corporate procedure by which Roger Williams had converted itself from a foreign into a domestic corporation and in its issuance of its stock shares, and he further alleges that $300,000 of the assets listed with the commissioner of insurance (as part of the $1,000,000 paidin capital statutorily required for an insurer in the surety business, see La.R.S. 22:71, subd. A(19) (1966)) should not be considered sufficient, since this amount was allegedly encumbered.
At the hearing, the insurer objected that the only issue before the court was its financial responsibility insofar as the five bonds at issue. It did not seek to rebut in detail the state's evidence tending to prove the allegations, although it introduced certain documentary evidence tending to prove that the $300,000 was not encumbered. Instead, the insurer produced by stipulation evidence that it had performed all its obligations as surety in the numerous instances it had furnished bail bonds in Orleans Parish.

I.
The prosecutor filed its rules to show cause under the purported authority of La. *560 C.Cr.P. art. 321: "The court having trial jurisdiction over the offense charged, on its own motion or on motion of the state or defendant, for good cause may either increase or reduce the amount of bail, or require new or additional security."
In ruling on the motion, the trial court did not require the defendants to furnish new or additional security, the only relief specifically sought by the motion. Instead, the trial court issued a blanket order to the clerk of court to accept no more bail bonds from Roger Williams. The court further ordered that the directors and officers of that company be personally responsible for the appearance of the four individual defendants for whom the surety had furnished bail bonds.[1]
At this point, we note that the thrust of the attack upon Roger Williams appearing as surety on the bail bonds is not its insolvency or its actual failure or ability to perform adequately its responsibility as surety. Instead, the attack concerns whether Roger Williams met the statutory qualifications of an insurer authorized to do business as surety in Louisiana. The prosecutor alleges and attempts to prove that Roger Williams did not meet such qualifications. He does so, despite the certificate of authority to Roger Williams to act as surety on bail bonds, which had been issued by the state commissioner of insurance, who is constitutionally and statutorily authorized to determine Roger Williams' qualifications to do so.
For reasons set forth below, this collateral attack upon the qualifications of an authorized surety is not contemplated or authorized in criminal prosecutions wherein the insurer has become surety upon a bail bond, as empowered to do so by the certificate of authority issued to it by the regulatory agency statutorily responsible for determining its qualifications to act as surety.

II.
La.C.Cr.P. art. 323 provides: "A surety company authorized to do business in the State of Louisiana may become surety for the release of a person on bail."
This code article appears in a chapter entitled "Sureties." After Article 323's provision that a surety company may become surety, the remaining articles of the chapter (324-329) regulate the qualifications and formalities for personal sureties who may also become surety on bail bonds.
In context, the provision of Article 323 means that a surety company "authorized to do business in the State of Louisiana" means that such a surety company is legislatively entitled to act as surety on bail bonds, just as personal sureties meeting the qualifications of Article 324 are also statutorily entitled to become surety.
Article 321 does not contemplate that a prosecutor may defeat an accused's release on bail by a collateral attack upon the certificate of authority of the commissioner of insurance authorizing the surety company to so act. We are re-enforced in this view by the legislative history and background of this article.
The Louisiana Code of Criminal Procedure was adopted in 1966 by the legislature upon recommendation of the Louisiana State Law Institute. The official revision comments to Article 323 note that the source of this article is La.R.S. 15:103, and that it is a restatement of the last clause of Article 103 of the 1928 Code to similar effect.
At the time Article 323 was enacted in 1966, Article 103 of the 1928 Code had been re-enacted in the Revised Statutes of 1950 as La.R.S. 15:103 and had been amended by Act 411 of 1962 so as to clarify its intent by the addition of a sentence which explicitly prohibited the courts from refusing to accept in criminal proceedings bail security furnished by any surety company authorized *561 to do business in Louisiana by the commissioner of insurance.[2]
The prosecutor forcefully argues that, despite the lack of shown intent to change the meaning of La.R.S. 15:103 (1962), the 1966 codification's re-enactment without the amendatory 1962 language indicates a legislative intent to permit the courts to refuse bonds of surety companies, even though they are legally authorized to act as surety by certificate of authority issued by the commissioner of insurance.
This argument, we think, is unsupported by any shown legislative intent or by the purposes of the 1966 codification. As to the latter, the Report of the Institute to the Legislature stated that the 1966 codification was designed generally to clarify and complement existing Louisiana procedures, to set forth concise rules and eliminate unnecessary language and provisions (commenting also upon "piecemeal, though well-meaning amendments" to the 1928 code), to carefully safeguard the rights of the accused without hypertechnical rules to provide loopholes through which the guilty may escape or justice be delayed, and to make no change for the sake of change. See Report to Accompany the Project of the Proposed Louisiana Code of Criminal Procedure (1966), 4 West's LSA Code of Criminal Procedure, p. xv (1969).
The absence of intent to change the prior meaning of Article 103 of the Louisiana Criminal Code of 1928, together with its (unnecessary) clarifying amendment of 1962 is, upon reflection, likewise supported by the primary purpose of the code articles regulating bail in criminal prosecutions:
That purpose is to effectuate the constitutional right of those who are, after all, merely accused of crime until convicted, to be released on bail pending trial. The provision of Article 323 that an authorized surety company may become surety for the release of a person on bail, just as the provision of Article 333 that a defendant criminally accused may furnish cash for the amount of his bail, is designed to assure that security meeting this statutory qualification should be accepted as sufficient when tendered by a criminally accused to secure his release pending trial (whatever discretion the trial court may have as to whether tendered personal sureties, Articles 324-29, possess the requisite qualifications).[3]

III.
Other American jurisdictions, similarly to Louisiana, have statutory provisions which permit the trial court to test the sufficiency of a bail surety, yet likewise provide for the acceptance as surety of a state-authorized surety company. The few decisions we could find from these jurisdictions uniformly adopt the view that the qualifications of the surety company cannot be collaterally attacked and that they must be accepted as sufficient for the company to act as a bail surety. Kreiss v. Clerk of Superior Court in and for Cochise County, 111 Ariz. 373, 530 P.2d 365 (1975); McKinley v. Johnson, 401 P.2d 1007 (Okl.Cr.App.1965); International Fidelity Insurance Company v. Sheriff of Dallas County, 476 S.W.2d 115 (Tex.Cr.App. 1972). See also Pride v. Anders, 266 S.C. 338, 223 S.E.2d 184 (1976).
The general principle, thus, is that a trial court may not entertain a collateral attack upon the qualifications of a surety company certified under state law by a state agency as possessing those qualifications: It may not by this collateral attack prevent the *562 release on bail by those persons furnishing security by such a surety company.
Nevertheless, within its inherent power to regulate judicial proceedings before it, the trial court may inhibit or deny an authorized surety company from furnishing bail undertakings before that court, upon a finding (after notice and hearing) that the company is a poor moral or unsafe risk because of its prior illegal or immoral conduct in its bail business,[4] or because it fails to comply with a valid rule or ruling of the court in connection with its bail undertakings in that court.[5]
Insofar as the prosecutor attempts to rely upon decisions illustrative of the principle enunciated in the previous paragraph (see footnotes 4 and 5), they are inapposite to the issue before us. Likewise inapposite is State ex rel. Howell v. Schiele, 85 Ohio App. 356, 88 N.E.2d 215 (1949), affirmed 153 Ohio St. 235, 91 N.E.2d 5 (1950), also cited to us by the prosecutor.[6] The decisions relied upon are not authority for the state's contention that a court may entertain a collateral attack upon the qualifications of a state-qualified surety company to furnish bail bonds in criminal proceedings, by virtue of its inherent power to regulate its court or of its power to test the sufficiency of bail sureties.
Conclusion
In summary, where state law provides that a surety company authorized by a state regulatory agency may act as surety for the release of an accused person on bail, the general rule in Louisiana and elsewhere is that the trial court may not refuse to accept such company as bondsman because of the alleged insufficiency as surety of the company, where the refusal is based upon a collateral attack upon the qualifications and requisite assets certified to be in accordance with law by the state agency entrusted by law with the responsibility to make such determinations.
Accordingly, we find that the trial court order was improvidently issued, and we set it aside and rescind it, insofar as it purported to order the clerk of court to accept no more bail bonds from the Roger Williams Insurance Company, and insofar as it purported to hold the directors and officers of that company personally responsible for the appearance of the defendants for whom that surety had furnished bail bonds.
ORDER OF TRIAL COURT SET ASIDE AND RESCINDED IN CERTAIN ASPECTS.
SUMMERS, J., dissents and will assign reasons.
SUMMERS, Justice (dissenting).
In five pending criminal cases in Orleans Parish, involving distribution of narcotics, theft and receiving stolen goods, the accused parties were free while awaiting trial under appearance bonds with Roger Williams *563 Insurance Company as surety. Alleging that Roger Williams had not met the requirements of law as an insurance company authorized to do business in the State of Louisiana, the District Attorney ruled the surety's agent and the surety into court to show cause why new or additional security should not be posted.
Roger Williams and its agents then moved to quash the rule nisi on the grounds that the company had a certificate to do business in Louisiana as a surety insurance company and the trial court had no authority to inquire into its qualifications, the court's jurisdiction being limited to ascertaining whether Roger Williams had a current certificate of authority.
After a hearing at which evidence was presented, the trial judge denied the motion to quash and for extensive reasons assigned ordered the Clerk of the Criminal District Court to accept no more Roger Williams Company appearance bonds "unless the company posts with the clerk of court an amount in cash equal to face amount of the bond."
In my view the trial judge was authorized to require the Roger Williams Company to furnish cash in the amount of the bonds it signed as surety under the facts and circumstances of this case.
At the present time, the Company is writing about sixty percent of the appearance bonds in the Orleans Parish District Court.
"Serious doubts" about the Roger Williams Insurance Company were raised in the judge's mind by the State's evidence. These doubts concerned the legal status, solvency and possible criminal activity of the company.
The evidence raised serious questions about the legality of the Company's proper authorization as an insurance company under Louisiana law. No evidence was presented to rebut the State's position in this matter. Furthermore, according to the trial judge, since the company began writing bail bonds in April 1977 it had apparently never met the capitalization requirements of Louisiana law (La.Rev.Stat. 22:71) requiring paid-in capital of $650,000 and a minimum surplus of $350,000 as a prerequisite to doing business as a Louisiana insurer.
Evidence was presented that the Company had attempted to conceal evidence by intentionally withholding pertinent information. No evidence was offered to contradict this possible criminal activity.
In order not to penalize the four defendants by increasing the amount of their bonds, in view of the questionable status of the company, the trial judge decided to hold the directors and officers of the company personally responsible for the appearance of the accused. He also ordered the Clerk of Court not to accept any but cash bonds from Roger Williams Insurance Company, until further order of court.
In addition to the inherent powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, whenever not restricted, enlarged or modified by law, specific authority is conferred upon the trial court by Article 321 of the Code of Criminal Procedure to increase or reduce the amount of bail, "or require new or additional security." See also La.Code Crim.Pro. arts. 16 and 17 for a statement of the inherent powers possessed by courts.
Bail is defined by Article 311 of the Code of Criminal Procedure as "the security given by a person to assure his appearance before the proper court whenever required." And "security given" pertains to all bail, whether it be the bond of a surety company or a deposit of money or securities. See Comments to Art. 311.
In determining the amount of the bail Article 317 provides that it shall be "such as in the judgment of the magistrate will insure the presence of the defendant having regard to . . . [t]he ability of the defendant to give bail, and . . . [a]ny other circumstances affecting the probability of the defendant's appearance."
According to Article 323 "A surety company authorized to do business in the State of Louisiana may become surety for the release of a person on bail." This article *564 does not say, and its clear and unequivocal language does not express an intent that a surety company is legislatively entitled to act as surety on bail bonds, as the opinion of the majority states. All it means is that a surety company "may" become surety if approved by the court.
The mere fact that the Legislature has deleted from a previous draft of Article 321 a provision which prohibited courts from refusing to accept bail furnished by any surety company authorized to do business in Louisiana constitutes an express rejection of the former prohibition. The amended Article 321 as quoted above does not mean that the prohibition remains by implication. The reasoning of the majority to that effect is untenable. See Act 411 of 1962.
A more probable and obvious conclusion is that the Legislature, considering the history of the former prohibition, found in its wisdom that such a compulsion imposed upon trial courts was incompatible with the administration of justice. For that reason the prohibition was abolished.
The view I have expressed is supported by elementary and fundamental authority. "Expressio unius est exclusio alterius" is a maxim applied to statutory interpretation.
"[W]here a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are designated, there is an inference that all omissions should be understood as exclusions." 2A Sutherland, Statutory Construction, Sec. 47.23 (4th Ed.). There is nothing peculiarly legal about this rule, rather it is a product of logic and common sense. It expresses the learning of common experience that generally when people say one thing they do not mean something else. Id. § 47.24.
Considered in the light of the court's inherent powers and the explicit authority conferred by Article 321 to require "new or additional security", I am satisfied that the "judgment of the magistrate" and his broad authority to consider "other circumstances affecting the probability of the defendant's appearance," conferred by Article 317, constitute ample authority to permit the trial judge to act as he did. He did not, and he is not, required to accept a questionable surety, only those "good and solvent."
The trial judge did not, as the majority holds, void Roger William's certificate of authority, nor does his judgment prohibit the company from writing bail bonds, except, pending further orders, in the Orleans Parish District Court.
In my view the majority has denied the trial judge a proper exercise of the powers delegated to him by the Legislature. In doing so this Court demeans the authority of the trial judge and inhibits his power to assure the appearance at trial of persons accused. As an example, we have been informed in the State's brief, three of the five defendants involved in these bail bonds were fugitives.
I would approve the ruling of the trial judge.
NOTES
[1] In view of our holding below on what we have denoted as the principal issue, we do not reach the substantial additional issue that these orders were not authorized by pleadings giving fair notice that such broad decrees might be issued and affecting individual directors and officers who were not parties to the limited proceeding then before the court.
[2] In full, the sentence provides: "Bail furnished by any surety company authorized by the commissioner of insurance, through its designated agents, shall not be refused by any court and shall be accepted on any bond required by law by the courts of this state for the violation of any ordinance of any municipality or police jury or act of the legislature, so long as the surety company or its agent shall furnish the necessary power of attorney."
[3] Somewhat similarly, in civil proceedings requiring security, an opponent desiring to defeat the bond-furnishing litigant's rights by attacking the sufficiency and validity of a bond is not permitted to raise any issue of the insolvency of "a surety company licensed to do business in this state." La.C.Civ.P. art. 5123.
[4] Concord Casualty & Surety Co. v. United States, 69 F.2d 78 (CA 2, 1934) (26 instances in which surety had secured an impostor to appear instead of the defendant for whom the appearance bond had been issued); Summit Fidelity & Surety Co. v. Nimtz, 158 Neb. 762, 64 N.W.2d 803, 806 (1954) (professional bondsman had been convicted of charges arising from his activities as a professional bondsman); Taylor v. Waddy, 206 Tenn. 497, 334 N.W.2d 733 (1960) (while solvency of state-authorized bondsman could not be questioned, 334 S.W.2d 734, trial court could suspend his right to furnish bonds, after notice and hearing, for (unspecified) good cause relating to ethical misconduct in his bail business before the court).
[5] United States v. Flynn, 190 F.2d 672 (CA 2, 1951) (new and different bail ordered furnished, because personal surety (the Civil Rights Congress) refused to answer valid query relating to their bail fund and their connection with the defendants, "a disregard of their responsibilities as sureties for the discovery and presentation before the court of their principals," 190 F.2d 673); In re Johnson, 26 N.C.App. 745, 217 N.E.2d 85 (1975), certiorari denied 288 N.C. 241, 217 N.E.2d 664 (1975) (professional bondsman suspended from writing bonds in that court for a year because he failed to file or falsified weekly reports of outstanding bond commitments required to be filed by valid court rule).
[6] This case merely held that municipal authorities, in a jurisdiction which gave them the power to license professional bondsmen, were not required to license as a bondsman a person with five criminal convictions, three of them of a felonious nature.