**Pamela JEFFERSON, Plaintiff,**

v.

**CITY OF HAZLEHURST,
et al., Defendants.**

**Civil Action No. 3:93–cv–250WS.**

United States District Court,
S.D. Mississippi,
Jackson Division.

Dec. 29, 1995.

Chokwe Lumumba, Chokwe Lumumba, Attorney, Jackson, MS, Sharon Denotra Henderson, Henderson & Lumumba, Jackson, MS, for Pamela Jefferson.

James D. Shannon, James D. Shannon, Attorney, Hazlehurst, MS, William E. Ready, Ready & Associates, Meridian, MS, William E. Ready, Jr., Ready Law Firm, Meridian, MS, for City of Hazlehurst, Randy Kimble, James D. Shannon, Ellis Stuart.

James W. Henley, Henley, Lotterhos & Henley, Hazlehurst, MS, Ross E. Henley, Henley, Lotterhos & Henley, Jackson, MS, James D. Shannon, James D. Shannon, Attorney, Hazlehurst, MS, for Copiah County Board of Supervisors, Kenneth McClendon, Carolyn Morgan, Grace Berry, Terrell Blackmon.

Sharon Denotra Henderson, Henderson & Lumumba, Jackson, MS, for Pamela Jefferson.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of defendants City of Hazlehurst, Mississippi, James D. Shannon, and Ellis Stuart, for summary judgment pursuant to Rule 56(b).[1] In her second amended complaint, plaintiff Pamela Jefferson alleges that these defendants unlawfully deprived her of a property right, namely, that of bail bondsman, by terminating her license to write bail bonds without a proper hearing. Plaintiff says that as a direct result of the actions of these defendants, her constitutional and federal statutory rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Title 42 U.S.C. §§ 1983 and 1985 have been violated, and she is, therefore, entitled to compensatory damages and injunctive relief enjoining the defendants from engaging in such conduct toward the plaintiff in the future. Defendants challenge plaintiff's contentions and assert that they are entitled to

---

1. Rule 56(b) of the Federal Rules of Civil Procedure provides:

(b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

summary judgment because: (1) plaintiff has failed to identify any clear, applicable constitutional right violated by defendants; (2) plaintiff has failed to show any specific acts or raise any reasonable inference about any conduct on the part of the City of Hazlehurst, which would subject the City to liability under Title 42 U.S.C. §§ 1983 and 1985; and (3) plaintiff has failed to allege any conduct on the part of individual defendants, James D. Shannon and Ellis Stuart, which involves anything other than judicial functions which are protected by judicial immunity. Plaintiff opposes defendants' motion, arguing that the facts of her lawsuit do indeed establish a constitutional and federal basis for her claims. Relative to defendant James D. Shannon, Municipal Judge for the City of Hazlehurst, and to Ellis Stuart, Chief of Hazlehurst Police Department, appointed by Judge Shannon as a hearing officer to determine plaintiff's eligibility to write bonds, plaintiff argues that these defendants were without jurisdiction to revoke and/or suspend her license and that their acts were not normal judicial functions protected by judicial immunity. Plaintiff does not address the liability of defendant City of Hazlehurst.

## I. *PARTIES AND JURISDICTION*

Plaintiff Pamela Jefferson is a citizen of Crystal Springs, Mississippi. Defendant James D. Shannon, a Municipal Judge for the City of Hazlehurst, Mississippi, is a resident citizen of Copiah County, Mississippi. Defendant Ellis Stuart, the Police Chief of the Hazlehurst Police Department, also is a Mississippi resident. This court has jurisdiction over this dispute pursuant to Title 28 U.S.C. § 1331.[2]

## II. *FACTS*

In February, 1992, James D. Shannon became a City of Hazlehurst Municipal Judge. As part of his policy, Judge Shannon required all bail bondsmen to file their license and their power of attorney with the court and upon appearing in his court to have in hand their license and power of attorney.

Judge Shannon supposedly adopted this policy so as to keep track of what a bail bondsman had on file with the Sheriff and the Circuit Clerk of the County.

Sometime prior to January 15, 1993, it came to Judge Shannon's attention that Pamela Jefferson did not have a license or a power of attorney on file. Judge Shannon further learned that Jefferson had outstanding bonds upon which she may have defaulted. Thereafter, Judge Shannon refused to allow Jefferson to write bonds in the City of Hazlehurst, pending the outcome of an evidentiary hearing he scheduled for January 15, 1993, to determine whether Jefferson indeed had outstanding bonds. According to Judge Shannon, he provided plaintiff the opportunity for a formal hearing in order to ensure that Jefferson's right to due process was honored since he felt that the ability to write bonds could possibly be a property right. Jefferson received notice of the hearing and its basis by letter dated January 8, 1993.

Present at the hearing on January 15, 1993, was Ellis Stuart, the individual appointed by Judge Shannon as the hearing officer, the City Attorney, and the City Clerk. Neither Jefferson, nor her lawyer or representative appeared.

After waiting a significant period of time for Jefferson to show up, Stuart conducted the hearing without her and heard evidence presented by the City Attorney and the City Clerk. Stuart also considered a letter written by Jefferson to Stuart in response to Judge Shannon's letter of January 8, 1993. According to defendants, the evidence presented showed not only that Jefferson's paperwork under Judge Shannon's policy was not in order, but that at the time Jefferson had four outstanding bonds, at least one of which had been due since 1991. Based upon this uncontradicted evidence, Stuart suspended Jefferson from writing bonds in the City of Hazlehurst. Stuart notified Jefferson of his ruling via letter dated February 2, 1993.

---

2. Title 28 U.S.C. § 1331 states:

> The district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Upon receiving Stuart's letter advising her of the suspension of her bond writing privileges, Jefferson commenced this action, alleging, among other things, racial discrimination under Title 42 U.S.C. § 1983 and conspiracy under § 1985.

### III. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate where the movant has demonstrated that there exists no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. *Daly v. Sprague,* 675 F.2d 716 (5th Cir.1982). In assessing whether the movant has met the burden of proof, the court views all of the facts and the evidence in the light most favorable to the non-movant. *Federal Deposit Insurance Corp. v. Dawson,* 4 F.3d 1303 (5th Cir.1993). If after this assessment the court finds that there are material factual disputes, then summary judgment is not appropriate. *Id.* However, if the court finds that in light of the record taken as a whole a rational trier of fact could not find for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. *Sims v. Monumental General Insurance,* 960 F.2d 478 (5th Cir. 1992); *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### IV. *DISCUSSION*

#### A. *SECTION 1983 CLAIM*

■ Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." To state a cause of action under Title 42 U.S.C. § 1983, the plaintiff must plead, and on summary judgment has the burden of showing by adequate and admissible evidence, seven elements. Firstly, the plaintiff must show that there was a clear and constitutional right in plain-

tiff. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Secondly, the plaintiff must show that there was a deprivation of that clear right, privilege or immunity secured to the plaintiff by the Constitution of the United States of America. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (the court must determine if plaintiff has identified a clear constitutional right in herself); *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979) ("inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a 'right secured by the Constitution and the laws'"). *See also Quives v. Campbell,* 934 F.2d 668, 670–71 (5th Cir. 1991) (summary judgment should be affirmed because plaintiff failed to state a constitutional claim); *Samaad v. Dallas,* 940 F.2d 925, 942 (5th Cir.1991) (reversing summary judgment that denied qualified immunity defense where plaintiffs failed to state a constitutional violation); *White v. Taylor,* 959 F.2d 539, 545 (5th Cir.1992) (in a 1983 action, the court must determine whether the contours of the plaintiff's rights are clearly established). Thirdly, the plaintiff must show that the defendants acted under "color of State law." *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Fourthly, plaintiff must show that there exists a direct causal connection, *Canton v. Harris,* 489 U.S. 378, 387–388, 109 S.Ct. 1197, 1203–1205, 103 L.Ed.2d 412 (1989), without intervening factors, between the deprivation and some injury to plaintiff. *Bennett v. City of Slidell,* 728 F.2d 762 (5th Cir.1984) (deprivation must be specifically identified and tied to the injury). Fifthly, plaintiff needs to establish that the act or omission by the defendant was intentional or at least deliberately indifferent to the Constitutional or Federal law rights of the plaintiff. *Griffith v. Johnston,* 899 F.2d 1427, 1435 (5th Cir.1990) (in order to state a cause of action for a due process violation under § 1983, plaintiff must establish that he was intentionally or recklessly deprived of the constitutionally protected interest); *Doe v. Taylor Independent School District,* 975 F.2d 137, 142 (5th Cir.1992) (deprivation can result from tortious conduct exceeding mere

negligence but not quite rising to the level of intentional, *e.g.,* deliberate (or conscious) indifference, recklessness or gross negligence), *reh'g granted and opinion vacated by Doe v. Taylor Independent School District,* 987 F.2d 231 (5th Cir.1993), *on rehearing Doe v. Taylor Independent School District,* 15 F.3d 443, 450 (5th Cir.1994) (to state a cause of action under § 1983 ... plaintiffs "must show that they have asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law"); *Canton, Ohio v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (only where an act or omission reflects a deliberate or conscious choice by a municipality can a city be held liable for such acts or omissions under § 1983); *Doe v. Taylor Independent School District,* 15 F.3d 443, 453 (5th Cir.1994) (a municipality or an individual to whom the municipality has delegated responsibility to directly supervise an employee is liable under § 1983 where the employee is supervised in a manner that manifests deliberate indifference); *Collins v. City of Harker Heights,* 503 U.S. 115, 123, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) (deliberate indifference is the threshold for holding a city responsible for the constitutional torts committed by its inadequately trained agents). *See also Salas v. Carpenter,* 980 F.2d 299, 307 (5th Cir.1992) ("unintentional conduct more culpable than negligence may deny due process"). Sixthly, the plaintiff must show that she suffered actual injury. *Memphis Community School District v. Stachura,* 477 U.S. 299, 308, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986) (where there is no injury present, no compensatory damages can be awarded). And finally, the plaintiff must prove damages as a proximate result of the injury. *Carey v. Piphus,* 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1986) (compensatory damages can be awarded where plaintiff has proved an actual injury caused by the denial of his constitutional rights).

## B. *DEFENDANT SHANNON*

Judicial immunity is a concept deeply rooted in Anglo–American law and common law. 48A C.J.S. Judges § 86. It originated in medieval times as a device to discourage collateral attacks against judges, thereby "helping to establish appellate procedures as the standard system for correcting judicial error." *Forrester v. White,* 484 U.S. 219, 225, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988). Judicial immunity also serves the purpose of preserving the integrity and independence of the judiciary as a matter of public policy. *Id.* at 226, 108 S.Ct. at 544 ("If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would manifestly detract from independent and impartial adjudication."); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ("It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation."); *Bradley v. Fisher,* 80 U.S. 335, 347, 13 Wall 335, 347, 20 L.Ed. 646 (1872) ("[I]t is a general principal of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his convictions, without apprehensions of personal consequences to himself."); *Harper v. Merckle,* 638 F.2d 848 (5th Cir. 1981) (a crucial policy basis supporting the doctrine of judicial immunity is the need to avoid vexatious litigation against judges and the need for an end to litigation).

As a general matter, judicial immunity protects a judge from liability for acts or omissions done in the exercise of his judicial function or capacity within the limits of his jurisdiction. *Cleavinger v. Saxner,* 474 U.S. 193, 199, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985); *Malina v. Gonzales,* 994 F.2d 1121, 1124 (5th Cir.1993); *Adams v. McIlhany,* 764 F.2d 294, 297 (5th Cir.1985); *Brewer*

*v. Blackwell,* 692 F.2d 387 (5th Cir.1982); *Ammons v. Baldwin,* 705 F.2d 1445 (5th Cir. 1983); 48A C.J.S. Judges § 86. This doctrine applies even where the action the judge takes is erroneous, illegal, malicious or in excess of his authority. *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). Accordingly, judicial immunity is not defeated "by allegations of bad faith malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventually trial." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991). *See Mitchell v. McBryde,* 944 F.2d 229 (5th Cir.1991) (judges are immune from claims arising out of acts performed in the exercise of their judicial function, even where the judge has acted maliciously); *Boyd v. Biggers,* 31 F.3d 279 (5th Cir.1994).

■ The doctrine of judicial immunity, though longstanding and expansive, is not absolute. Judicial immunity can be defeated in two sets of circumstances. *Boyd v. Biggers,* 31 F.3d 279 (5th Cir.1994). First, "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Stump,* 435 U.S. at 356– 357, 98 S.Ct. at 1104–1105; *Bradley v. Fisher,* 13 Wall. 335, 347, 20 L.Ed. 646 (1872); *Davis v. Bayless,* 70 F.3d 367 (5th Cir.1995); *Mitchell v. McBryde,* 944 F.2d 229 (5th Cir. 1991). The term jurisdiction, as it applies to judicial immunity, means the "judicial power to hear and determine a matter, not the manner, method, or correctness of the exercise of that power." 48A C.J.S. Judges § 86. Furthermore, for the purposes of immunity, a judge's jurisdiction is construed broadly. *Davis v. Bayless,* 70 F.3d 367 (5th Cir.1995). Thus, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes. *Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993); *Harper v. Merckle,* 638 F.2d 848 (5th Cir.1981) (judicial immunity extends to all "judicial acts" unless those acts fall clearly outside the judge's subject matter jurisdiction). However, because some of the most difficult and embarrassing questions which a judge may be called upon to answer and consider relate to his jurisdiction, the proper inquiry for determining judicial immunity is not whether the judge actually had jurisdiction, or even whether the judge exceeded his jurisdictional authority, but whether the challenged actions "were obviously taken outside the scope of the judge's power." *Davis v. Bayless,* 70 F.3d 367 (5th Cir.1995).

■ Secondly, "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991); *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988); *Stump v. Sparkman,* 435 U.S. 349, 360, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978). It is in this context where the doctrine of judicial immunity becomes particularly controversial. *Forrester,* 484 U.S. at 227, 108 S.Ct. at 544 (1988).

■ An act by a judge is a judicial one where it is a function normally performed by a judge and the parties are dealing with the judge in his judicial capacity. *Mireles,* 502 U.S. at 11, 112 S.Ct. at 288. *See Boyd v. Biggers,* 31 F.3d 279 (5th Cir.1994); *Slavin v. Curry,* 574 F.2d 1256 (5th Cir.1978). Thus, "as in other contexts, immunity is justified and defined by the function it protects and serves, not by the person to whom it attaches." *Forrester,* 484 U.S. at 227, 108 S.Ct. at 544 (1988). Although there is no precise or general definition of the class of acts entitled to immunity, *Forrester,* 484 U.S. at 227, 108 S.Ct. at 544 (1988), there are four factors generally relied upon in determining whether an act is judicial, thereby entitled to judicial immunity: (1) whether the precise act complained of is a normal judicial function; (2) whether the subject act occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around cases pending before the court; and (4) whether the act arose directly out of a visit to the judge in his official capacity. *Adams v. McIlhany,* 764 F.2d 294 (5th Cir.1985); *Ammons v. Baldwin,* 705 F.2d 1445 (5th Cir.1983); *McAlester v. Brown,* 469 F.2d 1280, 1282 (5th Cir.1972). These four factors are to be broadly construed in favor of immunity. *Malina v. Gonzales,* 994 F.2d 1121, 1124 (5th Cir.1993). Indeed, "immunity should not be denied

where the denial carries the potential of raising more than frivolous concern in a judge's mind that to take proper action might expose him to personal liability." *Id.* However, "when it is beyond reasonable dispute that a judge has acted out of personal motivation and has used his judicial office as an offensive weapon to vindicate personal objectives, and it further appears certain that no party has invoked the judicial machinery for any purpose, then the judge's actions do not amount to 'judicial acts'" and cannot be cloaked with judicial immunity. *Harper v. Merckle,* 638 F.2d 848, 859 (5th Cir.1981). *Mylett v. Mullican,* 992 F.2d 1347, 1352 (5th Cir.1993) (not all the acts by a person bearing the title of judge are judicial, nor are all judicial acts deserving of the immunity entrusted exclusively to judges).

This court holds here that Judge Shannon's inquiry and subsequent scheduling of an evidentiary hearing into plaintiff's province to write bail bonds in his court were acts of a judicial nature within Judge Shannon's jurisdiction. Under Mississippi statutory law, municipal judges are empowered to "sit as a committing court in all felonies committed within the municipality, and ... have the power to bind over the accused to the grand jury or to appear before the proper court having jurisdiction to try the same, and to set the amount of bail or refuse bail...." Miss. Code Ann. § 21–23–7 (1972). Clearly, concomitant with this power to set bail is the power to approve the surety who writes the bond. "It is the duty of an official in accepting bail to exercise the greatest care to see that the bond or recognizance he accepts is legal in form, that the sureties whose names are signed thereto are the persons they purport to be, and that they are able to respond to the full extent of the penalty thereof in case the principal fails to comply with the conditions...." 8 C.J.S. Bail § 102; 8 Am-Jur2d Bail & Recognizance § 8; *Calvert v. Lapeer Circuit Judges,* 442 Mich. 409, 502 N.W.2d 293, 294 (1993) (judges are not precluded from refusing to accept bonds written or provided by a person who has violated provisions of the Penal Code regarding bail bonds); *Commonwealth v. Miller,* 105 Pa.Super. 56, 160 A. 240 (1932) (a judicial officer has the right to exercise reasonable discre-

tion respecting sureties and all other matters in connection with the sureties); *Gilbreath v. Ferguson,* 195 Tenn. 528, 260 S.W.2d 276, 278 (1953) (a judge has "full authority to determine who shall and who shall not qualify as a bondsman in his own court"); *Hull v. State,* 543 S.W.2d 611, 612 (Tenn.Crim.App.1976) (a judge has the inherent power to administer his affairs including the right to impose reasonable regulations regarding the making of bonds); *State ex rel Howell v. Schiele,* 85 Ohio App. 356, 88 N.E.2d 215, 219 (1949) ("In determining the sufficiency of a surety, the courts have the sound discretion to determine not only his financial ability to respond to the penalty in the bond but also his moral responsibility in reaching a conclusion as to whether bail will ensure the presence of the defendant."); *Concord Casualty & Surety Co. v. United States,* 69 F.2d 78, 81 (2d Cir.1934) ("The court is not without protection if the surety company is deemed a poor, moral or unsafe risk. If the surety company should so conduct its business as to lose confidence of the court or a judge thereof, the judge to whom an undertaking is submitted in any case for approval could refuse to approve it...."); *State v. Armstrong,* 364 So.2d 558, 562 (La.1978) ("Within its inherent power to regulate judicial proceedings before it, the trial court may inhibit or deny an authorized surety company from furnishing bail undertakings before that court, upon a finding (after notice and hearing) that the company is a poor, moral or unsafe risk because of its prior illegal or immoral conduct in its bail business, or because it fails to comply with a valid rule or ruling of the court in connection with its bail undertakings in that court.").

This power to admit to bail, and its accompanying obligation to scrutinize sureties, is clearly a judicial act. 8 C.J.S. Bail § 39 (admitting to bail or allowing bail is generally considered to be a judicial act); *In re Johnson,* 26 N.C.App. 745, 217 S.E.2d 85, 87 (1975) (The reasonable requirements governing and regulating professional ... bondsmen clearly "come within the inherent powers of the court and may be properly supervised by the court."); *Summit Fidelity & Surety Co. of Akron, Ohio v. Nimtz,* 158

Neb. 762, 64 N.W.2d 803, 808 (1954) (the acceptance and approval of bonds is a judicial function); *Berkowitz v. United States*, 90 F.2d 881, 883 (8th Cir.1937) (granting bail and fixing its amount is a judicial or quasi-judicial function); *United States v. Abrahams*, 604 F.2d 386, 393 (5th Cir.1979) ("Bail may be set only by a judicial officer. The determination of bail requires a judicial decision of which conditions of release will reasonably assure the appearance of a defendant.")

It follows then that since Judge Shannon was empowered under Mississippi statutory law to admit the accused to bail, he also was empowered to inquire into the capacity and readiness of the surety to stand by her bond. These are acts judicial in nature, rooted not only in the inherent power of the courts and the implicit command of the statutes,[3] but also in commonsense. The concept of bail was formulated to respect the accused's presumption of innocence before trial and the law's insistence upon a guarantee that an accused would be present for his trial. Restricting judges from scrutinizing the capacity of sureties to deliver upon their obligations should their accused not show at trial would pose a serious handcuff to courts striving to breathe life into the underlying purpose of the bail concept.

Here, Judge Shannon had serious reservations about the plaintiff's qualifications. He questioned whether she had a license and whether she had outstanding bonds upon which she had defaulted. Justifiably, he made inquiry and even ordered a hearing, allowing to plaintiff her full panoply of due process rights. She chose not to attend the hearing. Nevertheless, the hearing occurred and the hearing officer determined from the evidence that plaintiff's paperwork was not in order and that, indeed, she had at least one unsatisfied, outstanding bond. Apparently, Judge Shannon's reservations had substance. Regardless of this outcome, however, Judge Shannon's acts were judicial in nature and sheltered by judicial immunity.

### C. *DEFENDANT STUART*

Defendant Stuart, who was appointed by Judge Shannon as the hearing officer, is also immune from liability pursuant to the doctrine of judicial immunity. In addition to judges of general jurisdiction, the doctrine of judicial immunity applies to individuals performing quasi-judicial functions. *Holloway v. Walker*, 765 F.2d 517, 524 (5th Cir.1985). Thus, the acts and omissions by those individuals whose powers and purpose are functionally comparable to that of a judge and those individuals who are acting pursuant to a court directive are immune from liability. *See* 48A C.J.S. Judges § 88. No party here disputes the fact that Chief Stuart was appointed by Judge Shannon to preside over plaintiff's hearing. No party here contends that Chief Stuart's inclusion in this lawsuit is premised upon anything else. Hence, this court finds that his actions were quasi-judicial in nature and also protected by judicial immunity.

### D. *DEFENDANT CITY OF HAZLEHURST*

Under the rubric of *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), in order to prevail on a § 1983 lawsuit against a municipality, plaintiff must prove that the municipality has caused a constitutional tort through policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Plaintiff mentions the City of Hazlehurst twice in her complaint—in the style of the case and how and where the City may be served. Plaintiff's complaint is noticeably silent of the allegations required by *Monell* and *Praprotnik*. Further, while defendants' motion for summary judgment emphasizes this omission, plaintiff does not even address the point in her response. Moreover, now that this court has found that the acts of Judge Shannon and Chief Stuart (sued by plaintiff in their official capacities) were protected by

---

3. *See* Miss.Code Ann. § 21–23–7 (quoted on pages 388–89 of this opinion) which empowers municipal judges to set and refuse bail.

the mantle of judicial immunity, plaintiff is left without any basis for the continued presence of the City in this litigation.[4] *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992) (actions by municipal judge did not subject City to liability under § 1983 for alleged civil rights violations since the alleged violation of plaintiff's constitutional rights resulted from the judge's judicial duties and not the City's official policy). Accordingly, this court hereby dismisses the City of Hazlehurst from this lawsuit.

## E. *SECTION 1985 CLAIM—CONSPIRACY*

■ Pursuant to Rule 56, Federal Rules of Civil Procedure, plaintiff is obliged to respond to the defendant's motion with evidence and law sufficient to establish a jury issue on the claims challenged, otherwise the court should grant the defendant's motion. *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994) (if the moving party meets the initial burden of demonstrating the absence of a genuine issue of material fact, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial), citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir.1995) (only where there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party is a full trial on the merits warranted).

■ So to survive a summary judgment motion on a Title 42 U.S.C. § 1985(3) claim, the plaintiff must show a prima facie case: (1) that the conspirators had the intent to deprive her of the equal protection of the laws or of equal privileges and immunities under the laws; and (2) that there was some class based, invidiously discriminatory animus behind the conspirators' action. The

plaintiff in this case has failed to establish a prima facie case on these points. Plaintiff here has simply made broad, sweeping, conclusory allegations unsupported by any hard facts. Mere statements of ultimate fact or conclusions of law are insufficient to raise and issue to defeat summary judgment. *Lechuga v. Southern Pacific Trans. Company*, 949 F.2d 790, 798 (5th Cir.1992). Plaintiff has presented no proof to show that defendants' concern with plaintiff's qualifications to write bail bonds was mired in a class-based invidious, discriminatory animus. Defendants contend that their inquiry sprung from a suspicion that plaintiff had outstanding bonds. Defendants now assert this as a fact. Plaintiff neither challenges this point, nor professes to show that non-minorities similarly situated were treated differently. Further, the undisputed proof is that Judge Shannon crafted a policy for all bail bondsmen and offered plaintiff a full hearing before taking any adverse action against plaintiff.

Moreover, since this court has determined that the acts of Judge Shannon and Stuart were cloaked with judicial immunity, plaintiff's charge of conspiracy which is predicated upon those acts is without foundation. *Cleavinger v. Saxner*, 474 U.S. 193, 199, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985); *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir.1993); *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir.1985); *Brewer v. Blackwell*, 692 F.2d 387 (5th Cir.1982); *Ammons v. Baldwin*, 705 F.2d 1445 (5th Cir.1983). Accordingly, this court dismisses plaintiff's claim of conspiracy under § 1985(3) against these defendants.

## V. *CONCLUSION*

For the reasons above stated, this court hereby grants defendants' motion for summary judgment and dismisses from this law-

---

4. Of course, this court is mindful that a municipal judge acting in "his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker. *See Bigford v. Taylor*, 834 F.2d 1213, 1221–22 (5th Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 108 (1988); *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir.), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 529, 88 L.Ed.2d 461 (1985); *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980); .... Only with respect to actions taken pursuant to his or her administrative role can a judge be said to institute municipal policy under *Pembaur* [*v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ], and *Monell* [*v. Department of Social Services*, 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978) ]."

suit the City of Hazlehurst and the individual defendants, Judge Shannon and Chief Judge Stuart. A separate judgment shall be entered in accordance with the local rules.